1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES INC. ET AL.,<br><br>Defendant. | Case No. 3:24-cv-05739-TMC<br><br>ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL |

## I.   INTRODUCTION

On September 4, 2024, Plaintiff City of Pontiac Police and Fire Retirement System filed this class action complaint on behalf of itself and all others similarly situated against Defendants ZoomInfo Technologies, Inc., Henry Schuck, Cameron Hyzer, TA Associates Management, LP, the Carlyle Group, Inc., and DO Holdings (WA), LLC. Plaintiffs allege that Defendants violated the Securities Exchange Act of 1934 ("1934 Act") and related Securities and Exchange Commission (SEC) regulations when they made materially false and misleading statements and omissions about ZoomInfo's financial status.

The Private Securities Litigation Reform Act (PSLRA) requires that putative class plaintiffs move for appointment as lead plaintiff and to appoint class counsel. Here, several

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL - 1

1
2
3
4
5

Plaintiffs filed such motions. Dkts. 30; Dkt. 35; Dkt. 38; Dkt. 40. Plaintiffs State Teachers Retirement System of Ohio and Ohio Public Employees Retirement System (the "Ohio Funds") have met the PSLRA's requirements for lead plaintiff. The other movants have not opposed the Ohio Funds' appointment. Thus, the Ohio Funds' motion for appointment as lead plaintiff and to appoint class counsel (Dkt. 35) is GRANTED. All other motions (Dkt. 30, 38, 40) are DENIED.

6

## II.    BACKGROUND

7
8
9
10
11
12
13

This putative securities class action is brought against Defendant ZoomInfo, Inc.; two of its executive officers, Defendants Henry Schuck and Cameron Hyzer; and its primary shareholders, TA Associates Management, The Carlyle Group, and DO Holdings, on behalf of investors who purchased or otherwise acquired shares of ZoomInfo Class A common stock between November 10, 2020 and August 5, 2024. Dkt. 1 ¶¶ 5–9, 13–17; Dkt. 36-3 at 2. The putative class members bring claims for violating Section 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Dkt. 1 ¶¶ 145–151.

14
15
16
17
18
19
20
21
22

As alleged in the complaint, ZoomInfo, a Vancouver, Washington corporation, is a software and data company whose main product is a commercial data platform specializing in contact and business information. Dkt. 1 ¶¶ 6, 19. ZoomInfo sells non-cancelable subscription contracts with terms ranging from one to three years. *Id.* ¶ 20. Its revenue "is generally recognized ratably over the life of the contract beginning with when the service is first made available to the customer." *Id.* The COVID-19 pandemic created "favorable market dynamics" for ZoomInfo, and the company saw substantial growth in 2020 and 2021. *Id.* ¶ 25. ZoomInfo executives "highlighted purported client and revenue growth[,]" advertising these results to potential investors. *Id.*

23
24

The Plaintiffs are purchasers of ZoomInfo's stock. *Id.* ¶ 5. The Class Period begins on November 10, 2020, the day after ZoomInfo touted its 2020 third quarter financial results. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

¶ 34. Between February 22, 2021 and August 1, 2022, ZoomInfo issued seven press releases announcing the Company's quarterly financial results. *See id.* ¶¶ 40, 44–45, 49–50, 54, 57, 61– 62, 69–70, 75–76, 81. Each press release stated that ZoomInfo's quarterly revenue had increased year-over-year. *See id.* ¶¶ 40, 45, 50, 57, 62, 70, 76. On earnings calls, Defendants claimed ZoomInfo's growth was "broad-based" and that expansion in existing client accounts "continued to accelerate." *Id.* ¶ 37. Defendants Hyzer and Schuck repeatedly made what Plaintiffs allege were materially misleading and false statements during these calls. *See id.* ¶¶ 41–43, 46– 48, 51– 53, 58–60, 63–68, 71–74, 77–80.

Eventually, the truth about ZoomInfo's financial status began to emerge. Dkt. 40 at 5. ZoomInfo gradually revealed its customer retention and revenue in a series of five corrective disclosures between November 1, 2022 and August 5, 2024. *Id.* On November 1, ZoomInfo published a report disclosing losses and held a call with analysts in which Defendant Hyzer revealed difficulties in the contract renewal process. Dkt. 1 ¶ 83. Financial analysts "panned the report as inconsistent with the Company's prior representations, . . . observing that the abrupt change in tone caught them 'flat-footed' given the Company and its management's recent 'bullish' commentary." *Id.* Following the November 1 news, the price of ZoomInfo Class A common stock plunged. *See id.* ¶ 84.

Over the next few months, this pattern repeated: ZoomInfo released new information, and the price of its Class A common stock plummeted. *Id.* ¶¶ 83, 84, 91, 92, 105, 106, 119, 120. The last announcement occurred on August 5, 2024. *See id.* ¶ 125. ZoomInfo issued a press release announcing the Company's 2024 second quarter financial results. *Id.* The release revealed that ZoomInfo was incurring a $33 million charge—the result of non-payments from customers. *Id.* The company had thus "been forced to implement a 'new business risk model' to reduce write-offs." *Id.* ZoomInfo reduced its annual revenue guidance by $65 million at the midpoint, from a

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL - 3

range of $1.255 billion-$1.27 billion to a range of $1.19 billion-$1.205 billion. *Id.* The price of ZoomInfo Class A common stock fell from $9.80 per share to $8.01 per share. *Id.* ¶ 126.

Ultimately, the price of ZoomInfo stock fell around 90% from its Class Period high. *Id.* ¶ 33. Plaintiffs allege they suffered billions of dollars in financial losses and economic damages as a result. *Id.* Plaintiffs sued Defendants on September 4, 2024, alleging the omissions and misstatements constitute violations of Sections 10(b) and 20(a) of the 1934 Act and Rule 10b-5. *Id.* ¶¶ 145–149, 150–151. The same day, Plaintiffs published notice of the suit in Global Newswire. Dkt. 36-3 at 2–3.

Following the notice, Plaintiffs Ohio Funds, Hampton Roads Shipping Association, International Longshoreman's Association, DeKalb County Pension Fund, and Teachers Retirement System of Louisiana all moved to be appointed lead plaintiff in the case. Dkt. 30; Dkt. 35; Dkt. 38; Dkt. 40.[1] Before the enactment of the PSLRA, courts typically granted the plaintiff who filed the first complaint the role of lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). But Congress, concerned with the incentives created by this practice, created a new procedure for court appointment of the lead plaintiff. *Id.* Plaintiffs' motions were made in accordance with this process. Each movant has provided the court the necessary information to determine who the appropriate lead plaintiff should be. *See generally* Dkt 31; Dkt. 36; Dkt. 39; Dkt. 41. The motions are ripe and ready for the Court's consideration.

### III.    LEGAL STANDARD

The PSLRA governs the procedure for selection of lead plaintiff in all private class actions under the Securities Exchange Act of 1934. 15 U.S.C. § 78u-4(a)(3). The PSLRA instructs courts to select as lead plaintiff the plaintiff "most capable of adequately representing

---

[1] Plaintiff Francisco Javier Martin Escanciano also submitted a motion for appointment as lead plaintiff but later withdrew it. Dkt. 33, 48.

1    the interests of class members." *Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u–

2    4(a)(3)(B)(i)). The most adequate plaintiff—the lead plaintiff—is "the one who has the greatest

3    financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id.*

4        Under the lead plaintiff provision, any member of the putative class may move for

5    appointment as lead plaintiff. The PSLRA "provides a simple three-step process for identifying

6    the lead plaintiff." *Cavanaugh*, 306 F.3d at 729. First, the pendency of the action, the claims

7    made, and the purported class period must be publicized in a "widely circulated national

8    business-oriented publication or wire service." *Id.* at 729 (quoting 15 U.S.C. § 78u-

9    4(a)(3)(A)(i)(I)). No later than sixty days after the notice is published, any potential lead

10   plaintiffs must move the court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

11       Second, the court must identify the presumptive lead plaintiff. *Cavanaugh*, 306 F.3d at

12   729–30. The court "must compare the financial stakes of the various plaintiffs and determine

13   which one has the most to gain from the lawsuit." *Id.* at 730. The PSLRA establishes a rebuttable

14   presumption for lead plaintiff in favor of the investor that (1) either filed the first complaint or

15   made a motion in response to the required notice; (2) has the "largest financial interest in the

16   relief sought by the class"; and (3) otherwise satisfies the requirements of Federal Rule of Civil

17   Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The court must then determine whether that

18   individual, "based on the information he has provided in his pleadings and declarations,"

19   satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'"

20   *Cavanaugh*, 306 F.3d at 730; *see also In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021).

21       Third, other plaintiffs may rebut the presumptive lead plaintiff's showing that he satisfies

22   Rule 23's typicality and adequacy requirements. *Id.* (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

23   Unless another plaintiff provides proof that the presumptive plaintiff "will not fairly and

24   adequately protect the interests of the class; or . . . is subject to unique defenses that render such

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO
APPOINT LEAD COUNSEL - 5

1    plaintiff incapable of adequately representing the class," the court must appoint the

2    presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If

3    necessary, the court may hold an evidentiary hearing to resolve factual disputes about the

4    presumptive lead plaintiff's adequacy. *Cavanaugh*, 306 F.3d at 732.

5                                **IV.    DISCUSSION**

6    **A.    Step One: The notice requirements have been satisfied.**

7    To start, the Court must consider whether notice was adequate. The PSLRA requires that,

8    no later than 20 days after the complaint is filed, the plaintiff(s) publish a notice advising

9    members of the class of the action. 15 U.S.C. § 78u-4(a)(3)(A)(i). Any plaintiff interested in

10   leading the class must then move the court to serve as lead plaintiff. 15 U.S.C. § 78u-

11   4(a)(3)(A)(i)(II). They must do so no later than sixty days after the notice is published. *Id.*

12   Here, the notice requirements have been met. The same day the complaint was filed,

13   notice of the suit was published in Global Newswire. Dkt. 36-3 at 2–3. The notice announced,

14   "that purchasers of ZoomInfo Technologies, Inc. (NASDAQ: ZI) Class A common stock

15   between November 10, 2020 and August 5, 2024, inclusive (the "Class Period"), have until

16   November 4, 2024 to seek appointment as lead plaintiff of the ZoomInfo class action lawsuit."

17   *Id.* at 2. Each of the Plaintiffs filed their motions before the sixty-day cutoff. *See generally*

18   Dkt 31; Dkt. 36; Dkt. 39; Dkt. 41.

19   The Court finds that this class action was properly noticed on September 4, 2024,

20   Dkt. 36-3, and that each movant's motion to appoint lead plaintiff was timely filed under the

21   deadlines imposed by the PLSRA, *see generally* Dkt 31; Dkt. 36; Dkt. 39; Dkt. 41. 15 U.S.C.

22   § 78u-4(a)(3)(A)(i). All movants have therefore met the statutory notice requirements.

23

24

**B.    Step Two: The presumptive lead plaintiffs are the Ohio Funds.**

1.    *The Ohio Funds have the largest financial interest.*

The Court moves to the second step of the analysis: identifying the presumptive lead plaintiff. Under the PSLRA, the presumptive lead plaintiff is the plaintiff with the "largest financial interest in relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Although the PSLRA does not specify a method for determining a proposed lead plaintiff's financial interest in the relief sought, many courts have adopted a four-factor test. *See, e.g.*, *Cook v. Atossa Genetics, Inc.*, No. C13-1836-RSM, 2014 WL 585870, at *3 (W.D. Wash. Feb. 14, 2014). In the Ninth Circuit, "courts must compare the financial stakes of the various plaintiffs and determine which has the most to gain from the lawsuit, through accounting methods that are both rationally and consistently applied. . . . Courts often consider the following four factors to determine financial interest: (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate loss suffered." *Reinschmidt v. Zillow, Inc.*, No. C12-2084-RSM, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013) (cleaned up); *In re Coinstar Inc. Sec. Litig.*, No. C11-133 MJP, 2011 WL 13233156, at *2 (W.D. Wash. Apr. 19, 2011).

Courts frequently focus on the final factor: approximate losses suffered. *See, e.g.*, *Studen v. Funko, Inc.*, No. C23-0824JLR, 2023 WL 5306005, at *2 (W.D. Wash. Aug. 17, 2023) (collecting cases)*; see also Hessefort v. Super Micro Comput. Inc.*, 317 F. Supp. 3d 1056, 1059 (N.D. Cal. 2018) ("While the PSLRA does not specify how to calculate the largest financial interest, approximate losses in the subject securities is the preferred measure.") (citation omitted); *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-04353-BLF, 2021 WL 5964596, at *2 (N.D. Cal. Dec. 16, 2021). "The trend among courts nationwide has been to use LIFO [last in first out] in calculating competing movants' estimated losses." *Lewis v. CytoDyn, Inc.*, No. C21-5190 BHS, 2021 WL 3709291, at *4 (W.D. Wash. Aug. 19, 2021) (collecting cases). "LIFO calculates

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL - 7

losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale." *Id.*

As noted above, four parties have moved for appointment as lead plaintiff: the Ohio Funds, Dkt. 35; Teachers' Retirement System of Louisiana, Dkt. 40; DeKalb County Pension Fund, Dkt. 38; and Hampton Roads Shipping Association, International Longshoreman's Association, Dkt. 30. The parties all calculated losses on a LIFO basis. *See* Dkt. 55 at 5. Each provided estimates of their losses. The Teachers' Retirement System of Louisiana claims losses totaling $22,334,316. Dkt. 40 at 2; Dkt. 41-2 at 2–8. The DeKalb County Pension Fund claims losses of $1,368,086. Dkt. 38 at 5; Dkt 39-3. The Hampton Roads Shipping Association, International Longshoreman's Association claims $688,247. Dkt. 30 at 5; Dkt. 31-3 at 2. And finally, the Ohio Funds claim $75,942,214. Dkt. 55 at 3. Based on these submissions, the Ohio Funds have the largest financial interest of the movants. Accordingly, because courts treat estimated loss as the most important factor, the Court concludes that the Ohio Funds have the largest financial interest in this action. *See Studen*, 2023 WL 5306005, at *3 (collecting cases).

That the Ohio Funds are a group of two entities (the State Teachers Retirement System of Ohio (STRS) and Ohio Public Employees Retirement System (OPERS)) is no issue. Dkt. 35 at 2; Dkt. 55 at 3. The PSLRA contemplates that the lead plaintiff may be either a "person or group of persons[.]" 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Courts in this District have allowed a group of unrelated shareholders to act as a lead plaintiff group where "the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation." *Cook v. Atossa Genetics, In*c., 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014) (quoting *Eichenholz v. Veriphone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008) (appointing a group of three individual investors who lacked a preexisting relationship)); *see also Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 186 (D. Ariz. 2021) ("[The Group] is

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL - 8

1   not so large that its size would impact its ability to adequately represent the class."). That is also

2   the case here.

3      Further, as the Ohio Funds point out, "the loss of STRS alone is larger than the losses of

4   any other movant." Dkt. 55 at 3. Courts in this Circuit have appointed a group of investors where

5   one group member "has the largest financial interest standing alone, and it would have achieved

6   lead plaintiff status alone had it sought such appointment[.]" *Ohio Pub. Emps. Ret. Sys. v. Meta*

7   *Platforms, Inc.*, No. 21-CV-08812-JST, 2022 WL 3571995, at *4 (N.D. Cal. July 26, 2022)*; see*

8   *also In re SVB Fin. Grp. Sec. Litig.*, No. 3:23-CV-01097-JD, 2023 WL 8367938, at *2 (N.D.

9   Cal. Nov. 30, 2023) (similar).

10     Finally, by presuming that the applicant with the largest financial interest was the most

11  adequate plaintiff, Congress sought to "encourage institutional investors to take a more active

12  role." *Cavanaugh*, 306 F.3d at 737 (cleaned up). Congress believed this would "ultimately

13  benefit shareholders and assist courts by improving the quality of representation in securities

14  class actions." *Id.* (cleaned up).

15     As institutional investors, the Ohio Funds are exactly the kind of plaintiffs Congress

16  envisioned when it crafted the lead plaintiff provision. *See Cavanaugh*, 306 F.3d at 737. The

17  Ohio Funds are the presumptive lead plaintiff.

18          2.      *The Ohio Funds satisfy Rule 23.*

19     The PSLRA requires a lead plaintiff to satisfy the requirements of Rule 23. 15 U.S.C.

20  § 78u-(4)(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage, however, all that is required is a prima

21  facie showing that the lead plaintiff's claims are typical and adequate." *In re Coinstar Inc. Sec.*

22  *Litig.*, No. C11-133 MJP, 2011 WL 13233156, at *2 (W.D. Wash. Apr. 19, 2011) (citing

23  *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999)); *see also*

24  *Studen*, 2023 WL 5306005, at *3 ("Although the court's typicality and adequacy analysis is far

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO
APPOINT LEAD COUNSEL - 9

1  more rigorous at the class certification stage, [a]t the lead plaintiff stage of the litigation, the

2  party moving for lead plaintiff of the consolidated action need only make a preliminary showing

3  that it satisfies the typicality and adequacy requirements of Rule 23.") (cleaned up).

4       Under this analysis, the typicality requirement is met "when the lead plaintiff's claims

5  arise out of the same event or course of conduct as do the other class members' claims and are

6  based on the same legal theories." *In re Coinstar*, 2011 WL 13233156, at *2 (citing *Hanlon v.*

7  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The typicality requirement asks whether

8  the presumptive lead plaintiff has suffered the same or similar injuries as absent class members

9  as a result of the same conduct by the defendants and are founded on the same legal theory."

10 *Hardy v. MabVax Therapeutics Holdings*, No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at

11 *6 (S.D. Cal. Sept. 6, 2018) (collecting cases).

12      The adequacy requirement is met when a representative party establishes that it "will

13 fairly and adequately protect the interests of the class." *Id.* at 7 (quoting Fed. R. Civ. P. 23(a)(4)).

14 The Ninth Circuit has instructed courts to assess adequacy by answering two questions: (1) do

15 the movant and its "counsel have any conflicts of interest with other class members" and (2) will

16 the movant and its "counsel prosecute the action vigorously on behalf of the class?" *In re*

17 *Mersho*, 6 F.4th at 899–900 (cleaned up).

18      The Ohio Funds are typical putative class members. *See* Dkt. 35 at 8. Like the other

19 members, the Ohio Funds "(1) purchased ZoomInfo Class A common stock during the Class

20 Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading

21 statements and/or omissions, and (3) were harmed when the truth was revealed." Dkt. 55 at 6.

22 *See Hardy*, 2018 WL 4252345, at *6 (finding typicality under the same analysis); *Frias*, 835 F.

23 Supp. 2d at 1075 (similar).

24

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO
APPOINT LEAD COUNSEL - 10

1       The Ohio Funds likewise satisfy Rule 23's adequacy requirement. The Ohio Funds are

2   adequate to represent the putative class because their interests are aligned with those of the other

3   putative class members and are not antagonistic in any way. *See Frias*, 835 F. Supp. 2d at 1076;

4   Dkt. 55 at 6–7. As the Funds attest, "[t]he interests of the Ohio Funds and other Class members

5   are directly aligned because all suffered damages from their purchases of ZoomInfo Class A

6   common stock at prices artificially inflated by Defendants' misconduct." Dkt. 55 at 6–7. As an

7   investor in the publicly traded securities of ZoomInfo during the alleged class period, and as an

8   investor who suffered losses upon ZoomInfo's alleged corrective disclosures, the Ohio Funds

9   have an identity of interest with their fellow putative class members. *Id.*; *see also Frias*, 845 F.

10   Supp. 2d at 1076. No facts suggest that any actual or potential conflict of interest exists between

11   the Ohio Funds and other Class members. *See* Dkt. 55 at 6–7.

12       Finally, as discussed further below, the Ohio Funds have selected qualified counsel to

13   represent the Class. *See id.* at 7; *see generally* Dkt. 36-4; Dkt. 36-5. The Ohio Funds are

14   institutional investors "capable of monitoring said counsel to ensure the effective and efficient

15   litigation of this action." Dkt. 55 at 7 (citing *Frias*, 835 F. Supp. 2d at 1072). Both members of

16   the group have served as lead plaintiff in previous similar actions. Dkt. 36-1 at 2, 6.

17       Thus, the Court finds that the Ohio Funds have satisfied the typicality and adequacy

18   requirements of Rule 23.

19   **C.      Step 3: The other movants have not challenged the Ohio Funds' presumptive status.**

20       Parties can rebut the "most adequate plaintiff" presumption with "proof by a member of

21   the purported plaintiff class that the presumptively most adequate plaintiff . . . [w]ill not fairly

22   and adequately protect the interests of the class; or . . . [i]s subject to unique defenses that render

23   such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

24

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO
APPOINT LEAD COUNSEL - 11

1    Here, movants have not challenged the Ohio Funds' status as the presumptive lead

2   plaintiff. The other movants have all submitted notices that they do not oppose Ohio Funds'

3   motion. Dkt. 49 at 2; Dkt. 53 at 2; Dkt. 54 at 2.

4    Since there are no challenges, the Court finds that the Ohio Funds should be appointed

5   lead plaintiff. The Ohio Funds' motion for appointment as lead plaintiff is GRANTED. All other

6   motions are DENIED.

7   **D.    The Ohio Funds' counsel is appointed as lead counsel.**

8    Under the PSLRA, "the lead plaintiff has the right, subject to court approval, to 'select

9   and retain counsel to represent the class.'" *Wong*, 2019 WL 2010706, at *2 (quoting 15 U.S.C.

10  § 78u–4(a)(3)(B)(v)); *see also In re Cavanaugh*, 306 F.3d at 734 ("While the appointment of

11  counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of

12  class counsel in the hands of the lead plaintiff."). The court "should not reject a lead plaintiff's

13  proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court*,

14  586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a

15  reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712

16  (citations omitted).

17   The Ohio Funds have chosen Labaton Keller Sucharow as Lead Counsel and Byrnes

18  Keller Cromwell as Liaison Counsel for the putative class. Dkt. 35 at 3. The declaration

19  submitted regarding the Ohio Funds' choice of Labaton Keller Sucharow indicates the firm has

20  litigated many complex securities cases, as well as a variety of other complex class actions. *See*

21  *generally* Dkt. 36-4; *see also* Dkt 35 at 10. The same is true for Byrnes Keller Cromwell, the

22  Ohio Funds' choice for liaison counsel. *See generally* Dkt. 36-5. No objections have been raised

23  concerning either firm's qualifications to serve. Accordingly, the Court will appoint Labaton

24

Keller Sucharow as Lead Counsel and Byrnes Keller Cromwell as Liaison Counsel for the putative class.

### V.   CONCLUSION

For the reasons explained above, Plaintiff Ohio Funds' motion, Dkt. 35, is GRANTED. The motions filed by Plaintiffs Hampton Roads Shipping Association, International Longshoreman's Association (Dkt. 30), Dekalb County Pension Fund (Dkt. 38) and Teachers Retirement System of Louisiana (Dkt. 40) are DENIED.

Consistent with the Court's previous scheduling order (Dkt. 25), the parties are directed to confer and submit to the Court a proposed schedule with deadlines for the filing of an amended complaint (or designation of an operative complaint) and for Defendants to answer or otherwise respond. The parties shall submit their proposed schedule within 14 days from entry of this Order.

Dated this 12th day of December, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING OHIO FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND TO
APPOINT LEAD COUNSEL - 13