THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>ZOOMINFO TECHNOLOGIES, INC., et al.,<br><br>                Defendants. | CASE NO. 3:24-cv-05739-TMC<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR:** AUGUST 25, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  SUMMARY OF ALLEGATIONS ............................................................................. 4

    A.  The Complaint's Theory of Fraud .................................................................. 4

    B.  Defendants Focused Investors on ZoomInfo's Revenue Recognition ................... 5

    C.  Defendants' Directive to Sell Without Any Due Diligence ................................. 6

    D.  ASC 606 Requires a Robust, Multi-Factor Ability and Intent to Pay Analysis ................................................................................................. 6

    E.  Defendants' Accounting Improprieties Concealed Diminishing Demand ............. 7

    F.  Defendants Doubled Down through Misstatements Regarding Demand, Growth, Profitability, and the True Source of ZoomInfo's Success ...................... 7

    G.  As ZoomInfo's Stock Soared, Defendants Made Billions in Insider Sales ........... 8

    H.  Defendants Received Clear Indications of Worsening Collectability, Requiring Contemporaneous Adjustments ........................................................ 8

    I.  Defendants' Deception Is Revealed .................................................................. 9

III.  ARGUMENT ........................................................................................................... 9

    A.  Legal Standard on Motion to Dismiss .............................................................. 9

    B.  Defendants' Misstatements Were False and Misleading When Made ................. 10

        1.  Defendants' RPO Disclosures Are False and Therefore Actionable ........ 11

            (a)  Defendants' Purported Reliance on the "Portfolio Approach" Is Inconsistent with the Complaint ............................. 11

            (b)  The Complaint Alleges Specific Facts that Adequately Plead Defendants' Accounting Improprieties ............................. 13

            (c)  Defendants' Purportedly "Clean" Audit Reports Are Not Exculpatory ............................................................................... 16

            (d)  Defendants' RPO Disclosures Are Not Inactionable Opinions ...................................................................................... 17

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

i

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

2.    Defendants' Misstatements Concerning Demand, Growth, Profitability, and the Source of ZoomInfo's Success Are Actionable ................................................................................... 18

(a)    The FE Allegations Underscore Defendants' Misstatements ....... 19

(b)    Defendants' Misstatements Concerning ZoomInfo's Success and Growth Are Actionable ........................................... 19

(c)    Defendants' Statements Are Not Inactionable Opinions ............. 20

(d)    Defendants' Statements Are Not Puffery ................................... 21

(e)    Defendants' Statements Are Not Protected by the Safe Harbor ..................................................................................... 22

C.    The Complaint Alleges a Strong Inference of Scienter ....................................... 24

1.    Defendants' Insider Sales Support Scienter ................................................ 24

(a)    The Amount and Percentage of Defendants' Insider Sales Are Suspicious ......................................................................... 24

(b)    Defendants' Insider Sales Are Suspiciously Timed ..................... 26

(c)    Defendants' Insider Sales Are Inconsistent with Their Individual Trading Patterns ........................................................ 28

2.    The FE Allegations Demonstrate a Strong Inference of Scienter ............. 28

(a)    The Complaint Adequately Described FEs with Sufficient Particularity .............................................................................. 28

(b)    The FE Allegations Corroborate Defendants' Mental State ......... 29

3.    Defendants' Post-Class Period Admissions Support Scienter .................. 29

4.    Defendants' Close Monitoring Supports a Strong Inference of Scienter ....................................................................................................... 30

5.    The Core Operations Doctrine Supports Scienter .................................... 30

6.    SOX Certifications Support Scienter ......................................................... 31

7.    Defendant Hyzer's Departure Supports Scienter ...................................... 31

D.    The Complaint Sufficiently Pleads Scheme Liability ......................................... 31

E.    The Complaint States a Claim for Control Person Liability ................................ 32

IV.    CONCLUSION ................................................................................................................. 33

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                    ii

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Peregrine Pharms., Inc.*,
   2013 WL 4780059 (C.D. Cal. 2013)................................................................................30

*In re Apple Inc. Sec. Litig.*,
   2020 WL 6482014 (N.D. Cal. 2020) ...............................................................................25

*In re Atossa Genetics Inc. Sec. Litig.*,
   868 F.3d 784 (9th Cir. 2017) ..........................................................................................23

*Azar v. Yelp, Inc.*,
   2018 WL 6182756 (N.D. Cal. 2018) ...............................................................................26

*Backe v. Novatel Wireless, Inc.*,
   642 F. Supp. 2d 1169 (S.D. Cal. 2009)...........................................................................27

*Berson v. Applied Signal Tech.*,
   527 F.3d 982 (9th Cir. 2008) ....................................................................................14, 24

*Bielousov v. GoPro, Inc.*,
   2017 WL 3168522 (N.D. Cal. 2017) ...............................................................................31

*In re BioMarin Pharm., Inc. Sec. Litig.*,
   2022 WL 164299 (N.D. Cal. 2022) .................................................................................26

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ..........................................................................................13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................................... *passim*

*City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013)........................................................................25

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ..........................................................................27

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..........................................................................25

*In re Dermtech, Inc. Sec. Litig.*,
   2025 WL 1618193 (S.D. Cal. 2025)...........................................................................13, 16

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

iii

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009) ...................................................................................................32

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023) ....................................................................................................10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...................................................................................................24

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .....................................................................................33

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) ..................................................................................................10

*In re Gilead Scis. Sec. Litig.*,
2009 WL 1561584 (N.D. Cal. 2009) ........................................................................................20

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ..............................................................................................10, 29

*Hable v. Godenzi*,
2024 WL 5252227 (9th Cir. 2024) ..........................................................................................10

*Hayden v. Portola Pharms., Inc.*,
2021 WL 3506614 (N.D. Cal. 2021) ........................................................................................18

*Howard v. Everex Systems, Inc.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................................32

*In re Intuitive Surgical Sec. Litig.*,
2017 WL 4355072 (N.D. Cal. 2017) ........................................................................................25

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022)..................................................................................32

*Kampe v. Volta, Inc.*,
2024 WL 308262 (N.D. Cal. 2024) ..........................................................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................................10

*Kovtun v. VIVUS, Inc.*,
2012 WL 4477647 (N.D. Cal. 2012) ........................................................................................30

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ..............................................................................10, 16

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                    iv

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 1208-1209 (9th Cir. 2016) ...................................................................14

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. 2020) .............................................................................29

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................24

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) ........................................................................................19

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ..........................................................................26

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................................21

*N.M. State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) ........................................................................................9

*No. 84 Emp-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d (9th Cir. 2003) .........................................................................................27, 28

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) .................................................................................25, 30

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ................................................................................................17, 18

*In re OmniVision Techs., Inc. Sec. Litig.*,
937 F. Supp. 2d 1090 (N.D. Cal. 2013) ........................................................................26

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ........................................................................................22

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 3653333 (N.D. Cal. 2022) .............................................................................19

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
2020 WL 2559939 (N.D. Cal. 2020) .............................................................................17

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ......................................................................................31

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ......................................................................................25

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT

Case No. 3:24-cv-05739-TMC                                    v

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ............................................................................ *passim*

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ...........................................................................24

*Retail Wholesale & Dept. Store Union Local 228 Retirement Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ......................................................................................10

*S.E.C. v. Richman*,
   2021 WL 5113168 (N.D. Cal. 2021) .............................................................................32

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016) ........................................................................................11

*Schuster v. Symmetricon, Inc.*,
   2000 WL 33115909 (N.D. Cal. 2000) ...........................................................................25

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) .........................................................................31

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ......................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................9, 10, 24

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) .........................................................................31

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 849 (N.D. Cal. 2023) .....................................................................21, 25

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ......................................................................................22

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................13, 14, 28, 29

**Statutes**

Private Securities Litigation Reform Act (PSLRA)............................................................3, 10, 22

Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241 (SOX) .............................................................31

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

vi

Securities Exchange Act of 1934

    Securities Exchange Act Section 10(b)........................................................................10

    Securites Exchange Act Section 20(a)...................................................................32, 33

**Rules and Regulations**

17 C.F.R. § 240.10b5-1.................................................................................................26

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 10

SEC Rule 10b-5(a)........................................................................................................31

SEC Rule 10b-5(b)........................................................................................................10

SEC Rule 10b-5(c)........................................................................................................31

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC        vii

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Court-appointed Lead Plaintiffs State Teachers Retirement System of Ohio and Ohio Public Employees Retirement System ("Lead Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendants ZoomInfo Technologies Inc. ("ZoomInfo"), Henry Schuck ("Schuck"), Peter Cameron Hyzer ("Hyzer"), Joseph Christopher Hays ("Hays"), and DO Holdings (WA) LLC's ("DO," collectively "Defendants") Motion to Dismiss ("Motion" or "MTD," ECF No. 91) the Corrected Amended Complaint ("Complaint," ECF No. 81).[1]

## I.    PRELIMINARY STATEMENT

Unable to refute the Complaint's legal sufficiency, Defendants simply rewrite it. Defendants' tactics are transparent: manipulate the factual allegations by cherry-picking, analyzing in isolation, and introducing new contentions—ultimately seeking dismissal of a complaint that is substantially (if not completely) different from the one before the Court.  In doing so, Defendants flout the legal standard underpinning 12(b)(6) motions to dismiss, which requires the Court to accept the facts alleged in a complaint as true.

Glaringly, Defendants ignore core allegations in the Complaint detailing their directive to dramatically expand ZoomInfo's subscriber base, particularly through riskier small business customers, while performing **no due diligence** into these potential customers' ability to pay for their contracts.  This ran contrary to applicable Generally Accepted Accounting Principles ("GAAP"), which required ZoomInfo to utilize sufficient data to perform a **comprehensive, multi-factor assessment** of the likelihood of collection.  Accordingly, ZoomInfo's collectability problems only worsened as its customer base grew with customers far riskier than ZoomInfo's historical subscriber list.

To keep investors in the dark about ZoomInfo's growing collectability problems, Defendants overstated a key accounting metric, Remaining Performance Obligations ("RPO"), representing the amount ZoomInfo stood to collect on its contracts.  Defendants further misled

---

[1] Unless noted, all emphasis is added, internal citations and quotes are omitted, and all capitalized terms, including Defendants, Individual Defendants and Sponsor Defendants, have meanings set forth in the Complaint.  Citations to "¶__" are to the Complaint.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

investors through misstatements that doubled down on ZoomInfo's overstated RPO figures, for example, touting "***record new customer additions***" and "[s]***trength . . . across all areas of the business***." At bottom, Defendants' overstatements of RPO figures and accompanying assurances about the Company's sustainable growth fraudulently concealed the reality of ZoomInfo's financial risk and the true driver of Company growth—sales made without conducting any due diligence. Defendants' directives and misstatements drove their scheme to defraud investors by keeping ZoomInfo's stock price artificially inflated as Defendants cashed out their shares at top dollar. Defendants' Motion should be denied for several reasons.

**First**, Defendants' RPO statements are adequately pled and actionable. Defendants search for a silver bullet by arguing that ZoomInfo's purported use of the "portfolio approach" allowed them simply to rely on "historical experience" in assessing RPO. However, Defendants cannot logically (or with a straight face) claim "history" when, throughout the Class Period, ZoomInfo's subscriber base constantly evolved and expanded by more than **75%** through **20,000** new customers for which no such history or experience existed. Moreover, Defendants' argument that ZoomInfo's RPO figures are inactionable opinion statements is at odds with prevailing case law. As courts in this Circuit have found, RPO concerns existing factors—*i.e.*, a company's present information regarding collectability likelihood—putting it squarely in the realm of fact, not opinion.

**Second**, the Complaint adequately alleges that Defendants' misstatements further misled investors to believe that ZoomInfo's demand, sales, and profitability were sustainable, when, in reality, they were not. For example, by touting ZoomInfo's "***record new customer additions***," and a "***new high watermark***" of customer contract "***spending***," Defendants bolstered the ostensible accuracy of their misleading RPO figures by (i) omitting the salient fact that ZoomInfo's subscription base was bloated with unvetted customers and (ii) falsely assuring investors that customer "spending" was intact.

Contrary to Defendants' arguments, however, such misstatements were not: (1) true (because they conflict with numerous former employee ("FE") allegations detailing Defendants'

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                    2

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

lack of due diligence, tracking flailing usage, and leaving uncollectable accounts on ZoomInfo's books for up to 360 days to conceal the Company's self-created collectability problems); (2) accurate statements of historical results (because they were false and contained material omissions); (3) puffery (because they omitted facts a reasonable investor would consider material); (4) inactionable opinions (because, among other things, they omitted material and contradictory facts that undermined their assertions); or (5) protected by the PSLRA's safe harbor (because they describe past or present events and were therefore not "forward-looking," nor were they accompanied by any meaningful cautionary language).

**Third**, the Complaint presents a strong and compelling inference of scienter. The sheer volume of proceeds from Defendants' insider sales truly shocks the conscience, something Defendants tellingly gloss over. Indeed, Defendants collectively sold more than **$8.6 billion** in ZoomInfo shares, with Defendant Schuck, ZoomInfo's CEO, single-handedly generating personal gains nearing **$1.1 billion**. Not only are Defendants' insider sales "astronomical," as the Ninth Circuit finds persuasive, they represented a significant percentage of their holdings. Moreover, the sales' suspicious timing—corresponding to Defendants' misstatements inflating ZoomInfo's stock price—and inconsistency with Defendants' trading patterns cut in favor of scienter.

Moreover, the Complaint sets forth a wealth of additional indicia, including: (1) particularized FE allegations describing Defendants' personal directives and engagement in predatory sales practices; (2) Defendants' post-Class Period admissions that ZoomInfo "**extended credit historically to customers who weren't creditworthy**;" (3) Defendants' monitoring of customer accounts and usage through an internal system called Gainsight; (4) the fact that subscriptions comprised nearly 100% of ZoomInfo's revenue, rendering them a core operation of Defendants' business; (5) SOX certifications attesting to accurate financial reporting; and; (6) Defendant Hyzer's suspiciously timed departure. Defendants' attempts to attack these allegations in piecemeal fashion, and therefore in contravention of the Supreme Court's instruction to view all scienter allegations "holistically," highlight the weakness and implausibility of their counternarrative.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC                                    3

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

At bottom, Defendants' Motion relies on a self-serving version of the allegations not actually present within the Complaint and rests on inapposite caselaw. As discussed in full below, Defendants' arguments are unpersuasive. Accordingly, the Motion should be denied in its entirety, the Complaint should be sustained, and the case should proceed to discovery.

## II.    SUMMARY OF ALLEGATIONS

Absent from Defendants' factual summary is any attempt to comprehensively address the Complaint's actually-pled theory of fraud. Rather, Defendants attempt to rebut selected facts in a vacuum, focusing on self-serving (and in many cases, newly introduced) nuances of Lead Plaintiffs' accounting claims to the exclusion of virtually all else. MTD at 4-9. Lead Plaintiffs level-set the relevant facts, as pled in the Complaint, below.

### A.    The Complaint's Theory of Fraud

ZoomInfo is a technology company that offers digital sales and marketing tools to businesses. ¶¶5, 108. ZoomInfo sells its digital products through subscription contracts that typically come up for renewal annually. ¶¶6, 110. ZoomInfo conducted an initial public offering ("IPO") on June 4, 2020, just sixteen months after the Company's February 4, 2019 formation. ¶¶111-112. During this time and throughout the Class Period, Defendants drove up ZoomInfo's stock price by directing rapid expansion of its customer base to include subscribers **without performing any due diligence** into those customers' ability or intent to pay for their contracts. ¶¶ 112-132.

In early 2020, Defendants used the global pandemic as an accelerant to generate exorbitant personal profit at investors' expense. ¶126. Indeed, Defendants ramped up their sales directives and ZoomInfo snapped up droves of new, unvetted customers, particularly financially risky small and medium businesses ("SMBs") that were desperate to stay afloat during a period of extreme disruption and uncertainty by, for example, signing customers that could afford ZoomInfo's products only because they had obtained temporary funding or loans. ¶¶126-128.

Once public, Defendants—armed with knowledge that ZoomInfo's remarkable growth hung on ephemeral demand and scores of contracts for which ZoomInfo was unlikely to collect

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                4

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

cash—kept their personal profit flowing on the backs of unwitting investors by continuing to sell without due diligence, causing the Company's collectability problems to proliferate. Indeed, from ZoomInfo's launch on June 4, 2019, to its first annual SEC report on February 22, 2021, the Company reported "more than 20,000 customers representing greater than 35% growth." ¶162. In conjunction with figures disclosed in ZoomInfo's February 5, 2024 10-K, ZoomInfo's customer base grew as follows:

| 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|------|------|------|------|------|------|
| ~14,000 | > 20,000 | 25,000 | 30,000 | 35,000 | 35,000 |

Accordingly, throughout the Class Period, from November 10, 2020 through August 5, 2024, ZoomInfo's customer base expanded by **more than 75%**, and, critically, included contracts with new and diverse customers in terms of business type, size, and geography. *See* ¶118-119, 128-129, 143, 162. The sheer expansion, diversification, and constantly evolving nature of ZoomInfo's customer base cuts against Defendants' heavy reliance on its purported "historical experience" with customers (which simply did not exist) and use of a purported "grouping" based on "knowledge of the customer" to assess collectability and report RPO. *See* MTD at 4-5.

## B.     Defendants Focused Investors on ZoomInfo's Revenue Recognition

The Complaint quotes Defendant Hyzer, ZoomInfo's former CFO, stating that, because ZoomInfo is a "**100% subscription-based business**," what the Company publicly "recogniz[es] as revenue is really **the best indicator** of what [ZoomInfo is] servicing for [its] customers." ¶453. Accordingly, investors paid close attention to the Company's RPO disclosures, which they understood as indicating exponential, but purportedly stable, revenue growth, driven in large part by the amount of revenue the Company expected to receive on its subscription contracts. *See* ¶133-134. Likewise, securities analysts described ZoomInfo's RPO disclosures as "**a proxy for annual contract value**," indicating the "**health of the business**," and "**the best approach**" to modeling company revenue. ¶¶136, n. 15, 144.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                    5

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

As such, Defendants were keenly aware of the import of ZoomInfo's RPO disclosures, and, as evidenced by Defendant Hyzer's statements, even focused investors' attention on them as a yardstick for Company health. *See* ¶¶144, 453. Defendants' factual summary bypasses Defendants' accountability by ignoring allegations in the Complaint citing Defendants' direct statements, instead relying on the Company's vague, broad risk disclosures. *See* MTD at 4.

### C. Defendants' Directive to Sell Without Any Due Diligence

Tellingly, Defendants' summary of the allegations does not address the core of the Complaint—that, for years and at Defendants' direction, ZoomInfo performed **no due diligence** into its customers' ability or intent to pay for their subscription contracts. *See* MTD at 4-7; ¶¶112-125. Indeed, by failing to outline any process whereby they vetted potential subscribers, Defendants appear to be arguing that ZoomInfo had no obligation to assess creditworthiness as a part of its collectability assessment. *See* MTD at 4-7. This is unsurprising, as the Complaint contains particularized allegations from numerous FEs that detail the fine points of Defendants' directive to expand ZoomInfo's customer base without performing any due diligence into those customers' ability and intent to pay—a data point necessary for Defendants' compliance with GAAP accounting rules. ¶¶112-125, 135-142. Multiple FEs, including FE-1, FE-2, FE-3, FE-4, and FE-10, recalled ZoomInfo's wholesale lack of due diligence, vetting of customers, credit control procedures, or barriers to sale, as well as Defendants' explicit directives and incentives to sell as many subscriptions as possible without regard to any collectability. *See id.*

### D. ASC 606 Requires a Robust, Multi-Factor Ability and Intent to Pay Analysis

As alleged in the Complaint, RPO is a mandatory GAAP metric that must be calculated in accordance with a set of compulsory, codified accounting standards ("ASC 606"). ¶134 at n. 13. Defendants attempt to tamp down the robustness of their obligations under ASC 606 and avoid liability by relying on malleable, catchall terms as "estimate" and "judgment." MTD at 4-5. However, under ASC 606, to estimate RPO, Defendants needed to utilize sufficient data to perform a **comprehensive, multi-factor assessment** of ZoomInfo's likelihood of collecting cash—and therefore generating revenue—on its subscription contracts. ¶¶134-143. To do so, ZoomInfo

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

thereby needed to assess its **customers' ability and intent to pay**.   However, having undertaken no due diligence into ZoomInfo's customers, Defendants lacked the critical data points necessary to truthfully report RPO in accordance with ASC 606.  *See* ¶¶112-125, 135-143.

### E.      Defendants' Accounting Improprieties Concealed Diminishing Demand

The Complaint alleges that Defendants utilized a series of accounting improprieties to conceal dwindling demand for ZoomInfo's products and the Company's collectability problems. ¶¶133-144.  First, ZoomInfo overstated its quarterly RPO, which investors understood to reflect the amount of revenue that ZoomInfo expected to receive on its subscription contracts.  ¶¶135-138.  Specifically, by failing to apply a proper variable constraint analysis to its RPO, Defendants concealed that ZoomInfo's rapidly expanding customer base was riddled with risky, unvetted SMB subscribers that were unlikely to pay their full contract value.  ¶¶138-140.  Then, Defendants failed to write down uncollectable accounts and, instead, left them on ZoomInfo's books for up to 360 days.  ¶¶141-143.  This gave investors the misleading appearance of sustainable demand and increased profitability while Defendants concealed rising nonpayment problems and collectability failures.  *Id.*

### F.      Defendants Doubled Down Through Misstatements Regarding Demand, Growth, Profitability, and the True Source of ZoomInfo's Success

Defendants reinforced ZoomInfo's misleading RPO figures by doubling down through misstatements regarding the Company's purportedly robust demand, growth, and profitability.  For example, Defendants' misstatements failed to disclose the true cause of ZoomInfo's rapid growth—namely, bringing on scores of new customers without vetting their ability to actually pay for their subscriptions—instead attributing ZoomInfo's "***broad based***" and "***record quarterly new sales***" to the Company's purported "***[s]trength . . . across all areas of the business***" and  a "***new high watermark***" of customer contract "***spending***."  ¶¶236-252.  The Complaint alleges specific facts showing that Defendants knew or were reckless in not knowing—for example, through delinquent accounts on its books (¶¶138-142), declining usage statistics (¶¶171-175), and the need

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                   7

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

to coerce renewals (¶¶178-182)—customers had not and would not actually "spend" at all to satisfy their subscription contracts. *See id.*

### G.    As ZoomInfo's Stock Soared, Defendants Made Billions in Insider Sales

Also absent from Defendants' factual summary is any mention of the "astronomical" profits their Class Period insider sales generated, which represented a significant percentage of their ZoomInfo holdings. *See* MTD at 4-7. As the Complaint alleges, Defendants' misleading RPO figures, misstatements, and fraudulent scheme artificially inflated ZoomInfo's stock price. Accordingly, once free to sell their shares on December 2, 2020, after post-IPO restrictions (the "lock-up" period) lifted, Defendants did precisely that. ¶153. Defendants ultimately pocketed more than **$8.6 billion** in insider sales. ¶156. Indeed, Schuck, ZoomInfo's CEO, realized dizzying personal gains of nearly **$1.1 billion**. *Id.* Defendants suspiciously timed these sales to align with the inflationary effect of their misstatements and the sales themselves represented a departure from their trading history, bolstering scienter.

### H.    Defendants Received Clear Indications of Worsening Collectability, Requiring Contemporaneous Adjustments

Defendants contend that ZoomInfo disclosed "adjustments to these estimates . . . in the periods in which they became known." *See* MTD at 5. This too belies the Complaint. Specifically, the Complaint contains particularized allegations demonstrating Defendants' awareness that ZoomInfo's likelihood of collectability was worsening as its subscriber base shifted, years prior to the Company's eventual write-down. *See* ¶¶120-125, 131-132 (describing ZoomInfo's wholesale lack of due diligence); ¶¶137-142 (describing ZoomInfo's failure to perform a proper variable constraint analysis and failure to write off uncollectable accounts for up to 360 days) ¶¶158-161 (describing concealed 2021 internal marketing survey revealing ZoomInfo's market share erosion); ¶¶171-175 (describing Defendants' tracking poor product usage through an internal system called Gainsight); ¶¶178-182 (describing ZoomInfo's coercive autorenewal tactics for customers with inability or unwillingness to continue subscriptions). Indeed, Defendants

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

8

ultimately admitted that ZoomInfo "extended credit **historically** to customers who weren't creditworthy"—acknowledging longstanding failures. ¶231.

### I.    Defendants' Deception Is Revealed

The truth about ZoomInfo's illusory revenue growth and lack of demand emerged through a series of disclosures whereby, in total, the price of ZoomInfo stock declined from a Class Period high of $77.35 per share to a low of $8.01 per share, a **90%** decline.  When the inevitable occurred (mass nonpayment, predominantly by unvetted SMBs), ZoomInfo issued a correction of its financial figures to the tune of $33 million on August 5, 2024, reducing guidance by approximately $65 million.  Defendant Hyzer resigned as CFO and Defendants admitted that:

- In years prior, ZoomInfo "**extended credit to a higher mix of SMB customers, and the rate of non-payment by these customers increased**" (¶225);

- ZoomInfo's bad debt charge stemmed from "**a higher risk of nonpayment**" than previously disclosed (¶231); and

- ZoomInfo "**extended credit historically to customers who weren't creditworthy**" (*id*.).

Securities analysts expressed shock at the Company's sudden and unexpected write-offs in real-time, citing "**the magnitude of the . . . write-down and lowered guidance**" in light of ZoomInfo's prior public disclosures.  ¶227.  Defendants now seek to minimize their own *mea culpa* and the impact of the write-down on investors.

## III.    ARGUMENT

### A.    Legal Standard on Motion to Dismiss

When considering the Motion, the Court must accept all factual allegations in the Complaint as true, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and must construe all facts "in the light most favorable to plaintiffs," considering the Complaint "in its entirety." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094-95 (9th Cir. 2011).  Defendants may not present alternative facts, plaintiffs' inferences need only be "plausible," and defendants may only suggest alternative inferences if they render the allegations in the Complaint

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

9

"implausible." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011); *see also Tellabs*, 551 U.S. at 322 (even in PSLRA cases, courts must accept all facts as true).

"To state a claim under Section 10(b) and Rule 10b-5(b), plaintiffs must allege: (1) a material misrepresentation or omission ("falsity"), (2) made with scienter, (3) in connection with the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024). Defendants challenge only falsity and scienter.

Moreover, while Rule 9(b) and the PSLRA require claims to be pled with particularity, the PSLRA does "not impose an unsurmountable standard." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 947 (9th Cir. 2023); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (cautioning courts against allowing heightened pleading standards to make it "near impossible" to state a fraud claim); *see also In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008) (PSLRA does not turn 12(b)(6) "into a trial-type, papers-only proceeding, much less one in which defendants get the benefit of every conceivable doubt, including credibility calls").

### B.    Defendants' Misstatements Were False and Misleading When Made

The Complaint adequately pleads falsity by specifying each misleading statement or omission and the reason it was misleading. *Hable v. Godenzi,* 2024 WL 5252227, at *2 (9th Cir. 2024). A statement is false or misleading if it "directly contradicts what the defendant knew at that time" or "omits material information." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023).

Additionally, a public statement is materially false or misleading if it is "inconsistent with" internal information. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017). A statement is also misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dept. Store Union Local 228 Retirement Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017). Notably, "once defendants cho[o]se to tout" positive information to the market, "they [are]

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

10

bound to do so in a manner that wouldn't mislead investors," including disclosing adverse information that cuts against positive information. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016).

### 1. Defendants' RPO Disclosures Are False and Therefore Actionable

The Complaint adequately alleges that Defendants issued false and misleading RPO figures. Defendants' primary argument against falsity appears to be that they used an accounting method that supposedly absolves them of wrongdoing. *See* MTD at 10-17. This is not a silver bullet. Under any method, Defendants' failure to perform any due diligence on its new, uncreditworthy customers—comprising over 75% of its base—resulted in overstated, misleading RPO figures.

### (a) Defendants' Purported Reliance on the "Portfolio Approach" Is Inconsistent with the Complaint

Defendants argue that, because ZoomInfo was purportedly "free" to use its "judgment," "estimates," and "historical experience," its RPO disclosures could not have been false. MTD at 11. However, Defendants' argument relies entirely on their unilateral and unsubstantiated introduction of a new fact—ZoomInfo's purported use of the "portfolio approach" in assessing collectability under ASC 606. MTD at 4-5. Defendants' purported use of the "portfolio approach" is a factual assumption the Court should **not** accept as true. *See* ECF No. 95 ("RJN Opp.") at 4-5. Indeed, ZoomInfo's use of such approach is not readily apparent from its SEC filings or communications to investors. MTD at 11. Ultimately, however, whether ZoomInfo disclosed this is wholly irrelevant to this Motion because Defendants' failure to adequately assess the collectability of ZoomInfo's growing customer base was a violation of ASC 606 under any accounting method, portfolio or otherwise.

According to Defendants, by adopting this approach, ZoomInfo grouped together "contracts with similar characteristics" and, using the Company's "historical experience," made estimates to account for "variable consideration"—*i.e.*, its analysis of collectability likelihood—when determining RPO. *Id.* at 5. However, Defendants' assertion that they purportedly used this

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

11

methodology stands at odds with the well-pled facts regarding ZoomInfo's constantly evolving customer base and lack of history with its droves of new, unvetted customers. ¶¶112-125, 135-142.

Specifically, ZoomInfo's surge of new, largely uncreditworthy customers meant that it did not have a reliable dataset of historical experience. The Complaint alleges that—to rapidly expand its number of customers—Defendants failed to assess new customers' creditworthiness through due diligence. ¶112. Indeed, in the lead up to and throughout the Class Period, ZoomInfo's customer base grew dramatically by **more than 20,000 customers**, many of which were SMBs. *See* ¶162. Because the composition of ZoomInfo's portfolio of new customers shifted significantly and often over the course of the Class Period, Defendants' contention that ZoomInfo assessed collectability through its "customary business practices," "knowledge of the customer," "historical experience," and by grouping "contracts with similar characteristics," was completely contrary to the what was happening at the time with ZoomInfo's customer base, and accordingly, flew in the face of ASC 606's requirements.[2] *See* MTD at 4-5.

Simply employing the "portfolio approach" does not absolve a company of its obligation to assess individual customers' ability and intent to pay under ASC 606. It merely serves as a shortcut in instances where a company has a predictable, consistent customer base and therefore can easily undertake the requisite underlying GAAP analysis and assessment. ZoomInfo had neither the historical customer base nor the ability to use such a shortcut. *See* ¶¶112-125, 135-142. Logically, Defendants' purported "portfolio approach" cannot work where they performed no underlying assessment in the first place. *See id.* Rather, Defendants' consistently climbing RPO figures during the Class Period (¶143) led investors to falsely believe that ZoomInfo's collectability likelihood was stable and unchanged—a false premise based on the Complaint's

---

[2] Assuming Defendants did in fact use the "portfolio approach," it is not hard to see how such a decision only served to further their fraud. Indeed, it is entirely consistent with the Complaint that Defendants purposefully chose to apply the "portfolio approach" in a completely inapplicable operational reality **because** they knew that method would not account for new, uncreditworthy customers and, thus, allowed Defendants to issue misleadingly inflated RPO figures and conceal the fraud while unloading their shares.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

allegations of due diligence failures, collectability problems, accounting improprieties, declining demand, tanking usage, and renewal failures over time.  ¶¶137-143, 158-161, 172-175, 179-182.

### (b)    The Complaint Alleges Specific Facts that Adequately Plead Defendants' Accounting Improprieties

Defendants also contend that the Complaint fails to allege "specific facts suggesting that ZoomInfo's RPO accounting was wrong." MTD at 11-12.  Defendants' point holds no water factually or legally.

**First**, the Complaint specifically alleges that ZoomInfo's RPO figures were overinflated over the course of **fifteen quarters** throughout the Class Period as a result of Defendants' lack of due diligence with respect to customers' payment ability.  *See* ¶¶254-264, 274, 276, 283, 298, 309, 311, 313, 317, 321, 323, 326, 329, 333, 340, 342, 345, 351; *see also In re Dermtech, Inc. Sec. Litig.*, 2025 WL 1618193 at *5-6  (S.D. Cal. 2025) (sustaining securities fraud class action complaint alleging violations of ASC 606, where company "had been over-accruing or prematurely recognizing revenue" and guidance "included amounts that were subject to reversal").  To demonstrate the misleading nature of those specific RPO disclosures, the Complaint contains particularized allegations from FEs recounting internal due diligence failures, accounting improprieties, flailing usage, and fleeing customers.  *See, e.g.*, ¶¶114, 121-125, 137-143, 158-161, 179-182.

Defendants, however, cannot simply cast aside the FE allegations as "conclusory" and "irrelevant."  Under Ninth Circuit law, FE allegations are deemed credible where the complaint: (1) describes the FEs "with sufficient particularity to establish their reliability and personal knowledge" and (2) the statements reported by the FEs are "indicative of scienter [or falsity]."  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *see also In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 787 (9th Cir. 2020) (*Zucco*'s two-prong test applicable to falsity as well as scienter).  Under *Zucco*, there is no requirement that the FE observe facts "first-hand," as long as the FE is described sufficiently to support the conclusion that she was "in a position to infer" or "could reasonably deduce" the facts attributed to her.  *Berson v. Applied Signal*

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                        13

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

*Tech.*, 527 F.3d 982, 985 (9th Cir. 2008); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208-09 (9th Cir. 2016).

Here, the Complaint describes the thirteen FEs' job titles (¶¶95-107), employment timeframes (*id.*), job responsibilities (*id.*), and additional details such as specific reports received by Defendants, and meetings attended (¶¶114, 130-131, 173-175). Such information demonstrates that the FEs were positioned to set forth the allegations attributed to them. *See Zucco*, 552 F.3d at 99. Defendants misstate the applicable standard, attempting to diminish eleven FEs' credibility by simply claiming that they "are not alleged to have discussed RPO . . . accounting, or any other relevant issues" with Defendants. MTD at 10-11. However, the Complaint's ample detail regarding the FEs' ability to, at the very least, "reasonably deduce" the facts attributed to them renders them credible. *See Lloyd*, 811 F.3d at 1208-09 (FE testimony can be based on hearsay and crediting FE testimony even where FE was not at the meeting with defendant).

**Second**, the Complaint sets forth specific allegations by the FEs indicative of both the falsity of ZoomInfo's RPO figures and scienter (as addressed in Section III.C.2, *infra*). *See, e.g.*, ¶¶114, 119-125 (FE-1, FE-2, FE-3, and FE-10 detailing Defendants' directive not to perform payment due diligence in order to expand ZoomInfo's customer base); ¶¶137-143 (FE-3 detailing Defendants' failure to perform proper variable constraint analysis and write down uncollectable accounts in real time), ¶¶158-161 (FE-13 and FE-11 detailing declining demand, including Defendants concealing a 2021 internal marketing survey revealing market share erosion), ¶¶172-175 (FE-4, FE-8, and FE-12 detailing Defendants' awareness of plummeting customer usage through internal system called Gainsight), ¶¶44, 179-182 (FE-5, FE-6, FE-9, and FE-10 detailing Defendants' coercive renewal tactics to retain customers with known nonpayment risk). Accordingly, the FE allegations demonstrate that Defendants' lack of due diligence, accounting improprieties, and internal metrics rendered Defendants' assessment of collectability risk, ZoomInfo's RPO numbers, and Defendants' statements regarding growth and profitability false and misleading.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

14

Defendants similarly contend that, because FE-3 is the "only FE alleged to have knowledge of ZoomInfo's accounting decisions," the remaining FE allegations cannot not speak to RPO. MTD at 10-11. This is simply wrong. The particularized, heavily corroborated allegations of the other FEs tell the same cohesive story of a lack of due diligence and growth at all costs approach that resulted in overstated RPO figures. For example, FE-4 (describing specific incentives by Defendants to sell without due diligence and meetings where Defendants presented declining customer usage) and FE-11 (describing specific examples of ZoomInfo's inability to maintain growth, as evidenced by a concealed internal marketing survey), indicate a change in ZoomInfo's subscriber base that belies its overstated RPO figures.

**Third**, Defendants claim that the Complaint must "specify the amount" by which "reported revenues" were allegedly inflated to sufficiently state a claim. *See* MTD at 11-12; *Kampe v. Volta, Inc.*, 2024 WL 308262, at *4 (N.D. Cal. 2024). Not so. *Kampe* cites to a host of "basic details"— including identification of products, dates, transaction types, employees, or approximate amounts involved in the fraud—as instructive when determining the sufficiency of allegations concerning "irregularities in revenue recognition." *Id.* at *11. However, "[p]laintiffs need not allege each of those particular details" but rather "must allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature." *Id.* at *32 (citing *In re Daou Sys.*, 411 F.3d 1006, 1016-17 (9th Cir. 2005) ("prematurely recognizing millions of dollars in revenue is not minor or technical in nature")).

Consistent with *Kampe*, the Complaint alleges: (i) the type of overstatement (no proper variable consideration model); (ii) timeframes (Defendants left uncollectable accounts on ZoomInfo's books for up to 360 days); (iii) employees (Defendants Schuck and Hays's directives to forego due diligence); (iv) products (expensive subscriptions to risky, unvetted SMB customers), and additional details (Defendants tracking flailing usage on Gainsight and employing coercive autorenewals). *See Kampe*, 2024 WL 308262, at *11. This goes well beyond mere "basic details" of Defendants' fraud. *See id.*; *see also* ¶¶121-125, 137-143, 158-161, 172-175, 179-182. Moreover, ZoomInfo's $33 million charge, $65 million reduction in guidance, and admission that

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC                                    15

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

it "**extended credit <u>historically</u> to customers who weren't creditworthy**," bolster the allegations' sufficiency. ¶231.[3]

### (c)    <u>Defendants' Purportedly "Clean" Audit Reports Are Not Exculpatory</u>

Defendants also contend that ZoomInfo's independent external auditor's (KPMG) "unqualified" or "clean" audit opinions demonstrate the accuracy of ZoomInfo's RPO figures. *See* MTD at 6. Not so. Courts consistently sustain complaints where, as here, the allegations provide sufficient inferences of fraud based on well-pled facts. *See*, *e.g.*, *In re LDK Solar*, 584 F. Supp. 2d at 1246 (upholding securities fraud complaint based on misstated financials despite clean audit opinion); *In re Dermtech*, 2025 WL 1618193, at *6 (denying motion to dismiss, finding defendants' arguments "explaining their compliance with GAAP" and pointing to clean auditors' reports "premature").

Indeed, Defendants' position regarding ZoomInfo's purported compliance with ASC 606's "portfolio approach" rests on cherry-picked excerpts of guidance on the subject provided by another "Big Four" auditor, PwC. *See* MTD at 2-3; RJN at Ex. 3. Defendants' excerpted guidance omits language from the very same source, which undercuts their own arguments, stating "[**b**]**efore accepting a new customer**," a company must "**perform . . . credit check procedures designed to ensure that it is probable the customer will pay the amounts owed**." *See* RJN at Ex. 3, p. 2-16 (ECF No. 92-3 at 11). Also tellingly, Defendants do not seek to introduce their own auditor's (KPMG) publicly available guidance on the purported "portfolio approach," which makes clear that companies should analyze their portfolios of contracts according to, for example, "**type of customer – e.g., size, location, duration as a customer, creditworthiness, type of business**," "**discounts and incentives**" offered, and whether the company has a "**high volume of contracts**

---

[3] Defendants' challenge to the materiality of ZoomInfo's $33 million write-down is inappropriate at this stage. *See* MTD at 5-6. Moreover, the Complaint describes how ZoomInfo's misleading RPO disclosures allowed it to beat Wall Street and internal guidance in the periods Defendants now cite for their "minimal" bad debt exposure. ¶224. Accordingly, Defendants' reductive "not a big deal" argument ignores the qualitative impact of the charge on investors. ¶¶ 224-226.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                                16

**with established history over time**."[4]  Defendants' attempt to escape liability for the RPO disclosures by relying on "clean" audit reports is unavailing.

### (d)    Defendants' RPO Disclosures Are Not Inactionable Opinions

Finally, Defendants contend that ZoomInfo's RPO disclosures are inactionable statements of opinion.  MTD at 10.  Defendants reach for magic words to draw this conclusion, for example, citing ASC 606's requirement of "exercises of accounting judgment."  MTD at 10-11.  However, courts in this Circuit have found that a company's overstatement of revenue in accordance with analysis under ASC 606 is a misrepresentation of "*existing*, rather than future" information, putting such disclosures "in the realm of 'fact' rather than 'opinion.'"  *See*, *e.g.*, *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2020 WL 2559939, at *21 (N.D. Cal. 2020) (citing *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (emphasis in original)).

Specifically, the *Granite Construction* court found that because plaintiffs premised their complaint on defendants' misrepresentation of presently known facts—such as "troubled projects . . . discussed extensively" and "cost overruns"—it rested on actionable statements of fact, not opinions.  *Id.*  Here, the Complaint alleges that Defendants' knowledge of ZoomInfo's complete and systemic lack of due diligence and its ever-changing portfolio of customer contracts, led Defendants to misrepresent such facts by overstating RPO.  ¶¶137-143, 158-161, 172-175, 179-182.  Accordingly, ZoomInfo's RPO figures are not opinions.  *See id.*

Nevertheless, even if treating ZoomInfo's RPO figures as opinions (which they are not), Defendants' arguments fail because the Complaint alleges specific facts showing that: (1) Defendants' omissions would be misleading to a reasonable investor; (2) Defendants did not subjectively believe that ZoomInfo's RPO disclosures were reasonable; and (3) Defendants' RPO estimates were objectively untrue.  *See Omnicare,* 575 U.S. at 182-84; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017).

---

[4]  KPMG, *Revenue Recognition Handbook*, US GAAP (Dec. 2024), at 50-51, *available at*, https://kpmg.com/kpmg-us/content/dam/kpmg/frv/pdf/2024/handbook-revenue-recognition-1224.pdf.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                    17

**First**, as detailed in Section III.B.1.(b), *supra*, the Complaint plausibly alleges undisclosed facts—including Defendants' failure to conduct due diligence, perform a proper variable constraint analysis, and write down uncollectable accounts—that "tend[] to seriously undermine" the RPO disclosures' accuracy. *See Omnicare*, 575 U.S. at 189; *see* ¶¶121-125, 137-143, 158-161, 172-175, 179-182. Indeed, had Defendants disclosed such facts to investors, they "would have shone a light on how inaccurate the [RPO] estimate was." *Hayden v. Portola Pharms., Inc.*, 2021 WL 3506614, at *5 (N.D. Cal. 2021).

**Second**, these same facts show that Defendants did not subjectively believe that ZoomInfo's customers—especially its risky SMB cohort—had the ability or intent to pay for their subscription contracts. *See City of Dearborn Heights.*, 856 F.3d at 616. The Complaint details Defendants' awareness that ZoomInfo had performed zero due diligence, its collectability likelihood changed, and customers were not using their subscriptions. *See* ¶¶121-125, 137-143, 158-161, 172-175, 179-182.

**Third**, Defendants' RPO misstatements were "objectively untrue." *Omnicare*, 575 U.S. at 189; *see* ¶¶121-125, 137-143, 158-161, 172-175, 179-182. Specifically, ZoomInfo's overstated RPO figures (¶143) stand at odds with the facts alleged (*i.e.*, lack of due diligence, variable constraint analysis, demand, product usage) because they reveal ZoomInfo's lower collectability likelihood and render the publicly stated RPO figures objectively untrue. *See* ¶143.

### 2. Defendants' Misstatements Concerning Demand, Growth, Profitability, and the Source of ZoomInfo's Success Are Actionable

The Complaint also adequately pleads numerous misstatements where Defendants made false and misleading assurances to investors regarding ZoomInfo's purportedly robust and stable demand, growth, and profitability. Defendants touted ZoomInfo's success while omitting that the Company owed its ballooning customer base to Defendants' directive to sign customers without vetting their ability to pay for their subscriptions. Defendants' misstatements and omissions reinforced Defendants' misleading RPO figures by doubling down on Defendants' misleading portrayal of stable revenue growth. Defendants' attacks on such misstatements are unavailing.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

18

### (a)    The FE Allegations Underscore Defendants' Misstatements

Defendants contend that the FE allegations are "not inconsistent" with the alleged misstatements.  MTD at 13-16.  However, as detailed in Section III.B.1.(b), *supra*, the FEs' corroborative accounts of Defendants' lack of due diligence, accounting improprieties, dwindling demand, tanking customer usage, and coercive renewals support the falsity of Defendants' assurances to investors.  *See* ¶¶121-125, 137-143, 158-161, 172-175, 179-182.

As a prime example, Defendants argue statements attributing ZoomInfo's sales success to the Company's purported "*[s]trength . . . across all areas of the business*" and a "*new high watermark*" of customer contract "*spending*" bear no nexus to the FE allegations.  *See* MTD at 13-16; ¶147.  However, numerous FEs, including FE-1, FE-2, FE-3, and FE-10, detail Defendants' directive not to perform payment due diligence in order to expand ZoomInfo's customer base and, accordingly, speak to Defendants' omission of the true cause of its "strength" and success—droves of subscription contracts without undertaking due diligence.  ¶¶112-123, 236-251.  As a result, Defendants' misstatements omitted the key driver of ZoomInfo's purported "strength," and information regarding the financial risk resulting from its lack of due diligence.  *See In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *13 (N.D. Cal. 2022) ("tout[ing] positive revenue results" actionable when the source of success not disclosed to investors).

### (b)    Defendants' Misstatements Concerning ZoomInfo's Success and Growth Are Actionable

Defendants also attempt to paint their numerous misstatements touting ZoomInfo's success and denying trends or anomalies to the contrary as inactionable "accurate historical results."  MTD at 15-16.  That argument fails.

**First**, Defendants' omissions render their misstatements actionable even if they reference accurate historical data.  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) ("statements, although literally accurate, can become . . . devices which mislead investors" if material information is omitted).  Here, Defendants misled investors about the cause and sustainability of ZoomInfo's success by: (1) falsely attributing ZoomInfo's record revenue to business strength,

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

19

momentum, and upsell activity (¶¶236, 272, 278, 286, 290); and (2) touting ZoomInfo's success without disclosing that its source was improper, unsustainable business practices (¶¶ 252, 302, 315, 319, 331, 348, 354). *See, e.g., In re Gilead Scis. Sec. Litig.*, 2009 WL 1561584, at *3 (N.D. Cal. 2009) (historic revenue numbers misleading when driven by off-label sales, not demand).

**Second**, Defendants ask the Court to accept the premise that their misstatements represented "accurate historical results" accompanied by promises the results would continue. This is wrong. The Complaint makes plain that Defendants' statements were false, because they omitted the fact that the Company's success was attributable to unsustainable and misleading business practices, not accurate recitations of historical results rendered misleading by context. *See, e.g.*, ¶252 (false that expansion was accumulating "***month-over-month throughout the year***"); ¶315 (false that Defendants "***didn't see anything***" to cause it to believe success would not continue); ¶ 319 (false that Defendants observed no "***anomalies***" or "***anything in the data***" suggesting success would not continue); ¶348 (false that SMBs were showing "***strong performance***,"); ¶354 (false that SMBs "***held in reasonably well***" in 2023). Defendants' attempts to reframe these statements ignore both the Complaint and the law. *See In re Quality Sys.*, 865 F.3d at 1143 (misstatements that Defendants did not see any anomalies in sales actionable and not historic fact).

### (c)    Defendants' Statements Are Not Inactionable Opinions

Defendants next claim that two of Defendant Schuck's misstatements regarding demand trends are inactionable opinions.[5] ¶¶265 (demand intact as digital marketing "***shift is here to stay***" regarding ZoomInfo's products); 278 (touting "***broad-based improvements across the business***" regarding revenue). As an initial matter, a plain reading of the statements confirms that they are not opinions. But even if the Court determines these statements are opinions (they are not), both are still actionable.

---

[5] Lead Plaintiffs incorporate their *Omnicare* analysis set forth in Section III.B.1(d), *supra*.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Opinion statements are actionable if they **omit** material and contradictory facts necessary to prevent the statement from being misleading. *City of Dearborn Heights*, 856 F.3d at 616. For example, a company's statement that it "believe[s]" that demand trends will continue to be strong is actionable if it fails to disclose known facts undermining those demand trends. *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 880-81 (N.D. Cal. 2023). In other words, if a company touts the success of its business model while omitting information that a reasonable investor would view as material, it cannot immunize those statements by virtue of the word "believe." Here, just like in *DocuSign*, the Complaint alleges that Defendants' misstatements omitted known and contrary facts; specifically, ZoomInfo observed a decline in demand and its success was due to risky and unsustainable business practices. ¶¶265-271, 278-282.

### (d)    Defendants' Statements Are Not Puffery

Defendants similarly label misstatements touting ZoomInfo's results and product demand as "puffery" merely because of the words "strong" and "healthy." MTD at 17-18. However, Defendants' contemporaneous knowledge and the context in which the statements were made belie this conclusion.

Courts must consider the context when assessing if a statement is puffery. *See Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966-67 (N.D. Cal. 2014) (assessment cannot be "in a vacuum, plucking the statements out of their context to determine whether words, taken *per se* . . . constitute puffery"). Courts should dismiss statements as "'puffery' only if . . . the statement is so obviously unimportant to a reasonable investor that reasonable minds could not differ on . . . their unimportance." *Id.* at 967. *See also In re Quality Sys.*, 865 F.3d at 1143 (optimism not puffery if statement omits "specific aspects" of company's operations).

Defendants' misstatements are actionable because, in context, they omit material adverse facts about ZoomInfo's subscription contracts, which represent substantially all of the Company's revenue—a fact meaningful to reasonable investors. ¶452-55; *See Mulligan*, 36 F. Supp. 3d at 966. For example, Defendants touting a "***healthy demand environment . . . caused by a secular tailwind***" (¶296) and "gross retention [that] continues to be ***really strong***," omits material and

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

21

adverse facts because Defendants' knew that ZoomInfo's ballooning subscriber base was due to its lack of due diligence, rather than demand, which had markedly declined as confirmed by an internal marketing survey. ¶¶112, 158-161.

Moreover, Defendants' misstatements are "capable of objective verification" and thus not puffery. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). For example, "***strong retention*** in upsell activity in the fourth quarter," (¶272) as well as "***strong performance . . . [m]etrics . . . when compared to our competition remains obvious***," (¶348) are representations that investors would rely on and presume to be accurate because they are based on the Company's empirical data. *See Or. Pub. Emps.*, 774 F.3d at 606. Defendants' misstatements created an objectively false narrative: demand remained strong and there were no indications that ZoomInfo's success would not continue. *See* ¶¶158-161 (describing concealed 2021 internal marketing survey revealing market share erosion).

**(e)    Defendants' Statements Are Not Protected by the Safe Harbor**

Defendants also attempt to render three of their misstatements inactionable through the PSLRA's safe harbor. ¶¶ 265, 296, 315. However, the safe harbor protects a statement only if it is "forward-looking and either is accompanied by [meaningful] cautionary language or is made without actual knowledge that it is false or misleading." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021). Moreover, as discussed in Section III.C., *infra*, Defendants' misstatements were made with actual knowledge of their falsity. As set forth below, Defendants' arguments fail.

**(i)    Defendants' Statements Are Not Forward-Looking**

**First**, Defendants inaccurately characterize their misstatements as forward-looking. The Ninth Circuit, however, has made clear that the "safe harbor is not designed to protect . . . current or past facts." *In re Quality Sys.*, 865 F.3d at 1142. Accordingly, the safe harbor does not apply to Defendants' misstatements that are clearly rooted in present or past information—such as what the Company currently sees or what has fueled its performance. *See* ¶296 ("[***W***]***e are seeing an incredibly healthy demand environment***" that "***is fueled by a secular tailwind***").

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC                          22

**Second**, the remaining two statements Defendants label as "forward-looking" are, at minimum, mixed statements. ¶265 ("[W]e feel pretty confident *that shift is here to stay*"), ¶315 ("And *we didn't see anything* that [would cause us to] *believe that the current strong demand trends we're seeing wouldn't continue or one-off [sic] or a pull-forward*."). In the Ninth Circuit, if the present aspect of a mixed statement "is materially false or misleading, it is likely that no cautionary language—short of an outright admission of the false or misleading nature of the non-forward-looking statement—would be 'sufficiently meaningful' to qualify the statement for the safe harbor." *In re Quality Sys.*, 865 F.3d at 1146-47. Here, the Complaint alleges that (1) Defendants observed evidence that the shift in demand trends was not "*here to stay*" (¶¶266-71); and (2) Defendants saw data indicating that the demand trends were not sustainable—all contemporaneous and knowing falsities not dependent on any future event (¶316). Accordingly, to the extent Defendants' statement included some future-looking aspects, they are predicated on present fact and not entitled to the safe harbor. *In re Quality Sys.*, 865 F.3d at 1146-47.

**(ii)**     <u>**Defendants' Statements Are Not Accompanied by Meaningful Cautionary Language**</u>

Nevertheless, even if some misstatements could be construed as forward-looking, ZoomInfo must show that they were accompanied by meaningful cautionary language. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017) (requiring "a stringent showing" of "sufficient cautionary language . . . such that reasonable minds could not disagree that the challenged statements were not misleading."). Here, ZoomInfo's risk warnings fall short because they did not disclose the Company's risky sales practices. MTD at 19. The risks contained in ZoomInfo's 10-K's were boilerplate and warned of future risks rather than disclosing the current problems the Company faced. For example, broad risks related to COVID-19 failed to address the Company's rampant due diligence failures and proven flailing demand. Such boilerplate disclosures do not adequately address the challenged misrepresentations regarding strong retention or demand trends, and therefore fall short of the stringent standard. *In re QuantumScape Sec.*

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

23

*Class Action Litig.*, 580 F. Supp. 3d 714, 738 (N.D. Cal. 2022) (cautionary language lacking particularity failed to adequately warn investors).

### C.    The Complaint Alleges a Strong Inference of Scienter

A complaint sufficiently pleads scienter when it alleges facts supporting a strong inference that defendants intended to deceive or were deliberately reckless "as to the possibility of misleading investors." *Berson*, 527 F.3d at 987.  The inquiry for scienter is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 551 U.S. at 310 (2007) (courts must view the scienter analysis "holistically").

Moreover, a strong inference of scienter, "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Id.* at 324.  Instead, when viewed holistically, plaintiffs' inference of scienter must be "at least as compelling as any opposing inference" and, if the competing inferences are equally plausible, "a tie goes to the plaintiffs." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).

### 1.    Defendants' Insider Sales Support Scienter

Defendants' substantial insider sales and their motive for "personal financial gain [] weigh heavily in favor of a scienter inference." *Tellabs*, 551 U.S. at 325.  For this analysis, courts look to: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *City of Dearborn Heights*, 856 F.3d at 621.  Further, because no one factor is dispositive, courts should consider the three factors holistically. *See, e.g., Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (scienter where "second and third factors neither weigh for nor against" evaluation).  Here, the Complaint meets all three factors.

### (a)    The Amount and Percentage of Defendants' Insider Sales Are Suspicious

The sheer amount and percentage of Defendants' sales—collectively over $8.6 billion— support scienter.  ¶156.  Specifically, Defendant Schuck unloaded more than 67% of his holdings,

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

24

an "astronomical" amount, at nearly $1.1 billion.[6]  ¶406; *see Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) ($900 million in net sales supports scienter).  Further, while Defendants Hays and Hyzer sold "only" $66 million and $35 million, respectively, Defendant Hays disposed of 65% of his holdings and Defendant Hyzer sold 32%, both well above the level that courts in this Circuit routinely find indicative of scienter.[7] *See* ¶406; *Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (sale of 20% of holdings supported scienter); *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *4 (N.D. Cal. 2017) (sales of 40% and 30% support scienter).

Defendants also introduce facts not in the Complaint, arguing that a late Class Period share repurchase approximating $700 million, or barely over 10% of total proceeds from insider sales, exonerates them.[8]  MTD at 27.  However, Defendants' own substantial insider sales at the very same time belie this argument.  *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *13 (N.D. Cal. 2020) ("stock buy-backs . . . enrich [defendants] in a way that is entirely consistent with scienter").  Indeed, in March 2023, Defendants' approval of the share purchase program allowed them to unload another $58 million at or around $25 per share, roughly 70% higher than the Class Period low of $8.01 per share.  ¶¶205-07; *see In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1187 (C.D. Cal. 2008) (stock repurchase program "augmented market demand . . . allowing more sales without depressing prices").  The share repurchase program therefore supports scienter.

---

[6] That some of the transactions occurred outside of Defendants' Rule 10b5-1 trading plans and were related to "non-discretionary tax liability" does not preclude scienter.  MTD at 25; *see Weston*, 669 F. Supp. 3d at 885-86 (sales suspicious despite some allegedly made to pay personal taxes).

[7] Defendants' cases are inapposite.  MTD at 26.  In *City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, "neither of the [i]ndividual [d]efendants sold shares of stock during the Class Period."  963 F. Supp. 2d 1092, 1141 (E.D. Wash. 2013).  And the *Schuster* court noted that "no reasonable jury could find scienter in case where defendants 'sold only a minuscule fraction of their holdings . . . and ended up reaping the same large losses as did Plaintiffs.'"  *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909, at *7 (N.D. Cal. 2000).

[8] Defendants' submission of Exhibits 8 and 16 for the truth of the facts therein is improper because the exhibits dispute the Complaint's allegations that the insider sales are suspicious and indicative of scienter.  *See* RJN Opp. at 5.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

25

**(b)    Defendants' Insider Sales Are Suspiciously Timed**

Defendants cannot use the existence of a 10b5-1 plan to negate the effect of otherwise suspicious stock sales, especially when Defendants enacted their plans with material non-public information during the Class Period.[9]  ¶¶154 n.19, 407-08; *see Azar v. Yelp, Inc.*, 2018 WL 6182756, at *18 (N.D. Cal. 2018) (10b5-1 plan is "an affirmative defense to insider trading allegations only if the insider adopted the plan [b]efore becoming aware of the [material nonpublic] information").  Indeed, courts in this Circuit routinely find that 10b5-1 trading plans do not negate an inference of scienter in similar circumstances.[10]  *See In re BioMarin Pharm., Inc. Sec. Litig.*, 2022 WL 164299, at *14 (N.D. Cal. 2022) (rejecting argument that "trades were nondiscretionary and pre-planned" because "concealing the negative information before the sale and setting the sale to occur prior to [the corrective disclosure] were discretionary choices").

Moreover, Defendants' insider sales were "calculated to maximize the personal benefit from undisclosed information." *City of Dearborn Heights*, 856 F.3d at 621.  Throughout the Class Period, Defendants suspiciously timed their sales at or near Class Period highs shortly after making false and misleading statements.  *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1110 (N.D. Cal. 2013) (finding timing "suspicious" when sales occurred near Class Period highs).

For instance, aware that ZoomInfo's unsustainable growth was fueled by risky SMB customers (¶¶303-10) and two days after Defendants' August 2, 2021 misstatements touting ZoomInfo's "***highest levels ever for both retention activity and customer engagement***"—which sent the Company's stock to a near record-high of $66.58 per share—Defendant Schuck, together with the Sponsor Defendants, orchestrated two suspiciously timed, non-dilutive secondary offerings[11] to sell $360.9 million, outside of Shuck's 10b5-1 trading plan. ¶¶165-67; *see Mulderrig*

---

[9] Similarly, to the extent that the Court decides to consider the contents of Exhibits 13-15, the Court should not assume the truth of the matters asserted therein for the purposes of disputing the Complaint's insider sales allegations. *See* RJN Opp. at 5.

[10] Nothing about the 10b5-1 trading plan required Defendants to sell when they did.  *See* 17 C.F.R. § 240.10b5-1.  Since Defendants have not provided the plans,"the Court . . . cannot conclude that the plan negates any inference of scienter." *Azar*, 2018 WL 6182756, at 18-19.

[11] A non-dilutive secondary offering allowed Defendants to unload existing shares, whereas a dilutive secondary offering would have allowed them to sell only newly issued shares. ¶¶166-67.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

26

*v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1028-29 (N.D. Cal. 2020) (suspiciously timed secondary offering indicative of scienter).   Then, in September 2021, outside of their 10b5-1 plans, Defendants Hays and Hyzer sold another $15.5 million and $20 million, respectively.  ¶168.

Likewise, after Defendants' misstatements on November 1, 2021, touting ZoomInfo's RPO and "***really high gross retention***" (¶¶329, 331, 333), the Company's stock price skyrocketed to a Class Period high of $77.35.  ¶176.  Immediately following the misstatements, in November and December 2021, Defendants Schuck, Hays, and Hyzer each sold $258 million, $29 million, and $2 million, respectively.  ¶176-77.

Then, from February 2022 to August 2022, Defendants continued to misrepresent that the demand remained strong, keeping the stock price inflated, while the Company's internal metrics were showing sharp declines in demand and mounting collectability problems.  ¶¶315, 317, 319, 321, 323-24, 326-27.  For example, on February 16, 2022, Defendant Schuck touted that he saw no "***anomalies that could have indicated that we had this pull forward in demand that came from COVID***."  ¶319.  Knowing that their fraudulent scheme would soon be revealed, just one month before the first partial corrective disclosure—after which ZoomInfo's stock price fell 29%—Defendants collectively cashed out another $68.9 million.  ¶¶185-86, 191.

Worse, to eke out the last bit of profit before ZoomInfo's RPO and revenue growth came to a halt, Defendant Schuck manipulated his existing 10b5-1 plan by adopting a new plan enabling him to sell up to 6 million shares between May and November 2023, further supporting an inference of scienter.  ¶206; *see Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1185 (S.D. Cal. 2009) (that "[d]efendants amended their 10b5–1 plans to allow more stock sales based on their inside information . . . supports an inference of scienter"); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1068-69 (C.D. Cal. 2008) (amending 10b5-1 plans to sell more shares during the class period supported scienter).  Indeed, in June 2023, one month before the third corrective disclosure—which sent ZoomInfo's stock crashing another 28%—Defendant Schuck unloaded $55 million.  ¶206.  Accordingly, the timing of Defendants' sales is suspicious. *See No. 84 Emp-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d at

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC                    27

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

920, 939 (9th Cir. 2003) (sales suspicious when "near the stock's peak . . . and just prior to the stock's decline").

### (c) Defendants' Insider Sales Are Inconsistent with Their Individual Trading Patterns

Defendants Schuck, Hyzer, and Hays—despite selling **over $1.1 billion** during the Class Period—stopped making sales once Defendants' fraud was revealed. ¶80. This strongly supports scienter because they knew that ZoomInfo's stock price was artificially inflated from their misstatements. Indeed, the stock traded as high as $77.35 per share during the Class Period, but once the truth was fully revealed, ZoomInfo's stock price corrected and crashed to $8.01 per share—a roughly 90% decline from the price which Defendants made their insider sales.[12] ¶¶176, 228.

Taken together, the substantial amount and percentage, suspicious timing, and absence post-Class period of Defendants' insider sales support scienter.

### 2. The FE Allegations Demonstrate a Strong Inference of Scienter

As described in Section III.B.1.(b), *supra*, the FE allegations satisfy the Ninth Circuit's two-prong standard. *Zucco*, 552 F.3d at 995. This analysis is easily satisfied in evaluating scienter.

### (a) The Complaint Adequately Described FEs with Sufficient Particularity

The Complaint pleads details about each of the FE's "job descriptions," including their exact titles, roles, duties, tenures and in some cases, their reporting structure ¶¶95-107, satisfying the first prong of *Zucco*. *See Zucco*, 552 F.3d at 995-96; *supra* pp. 13-14. Despite this, Defendants argue that FEs were not positioned to have the requisite knowledge because they are low-level employees and only two FEs had any contact with the Individual Defendants. MTD at 20. But

---

[12] Defendants' argument that the Complaint alleges no prior trading history is misplaced because: (1) ZoomInfo became a publicly traded company mere months before the Class Period; (2) the Complaint alleges that none of the Defendants made sales after the Class Period; and (3) courts may not consider post-class period trading. ¶229; *see, e.g.*, *Am. W. Holding*, 320 F.3d at 939-40 (trades suspicious where no defendants sold for "at least four months following the class period").

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT

Case No. 3:24-cv-05739-TMC                    28

this is factually incorrect and legally inconsequential. *See, e.g.*, ¶95-107; *Glazer Cap. Mgmt.*, 63 F.4th at 772-73 (FEs, who had no direct contact with defendants, supported scienter).

### (b)     The FE Allegations Corroborate Defendants' Mental State

The second prong of *Zucco* is also met here as the testimony from the FEs is plainly indicative of Defendants' scienter. In assessing the second prong, courts "look to the level of detail provided by the [FEs], the corroborative nature of the other facts alleged (including from other sources, the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *Zucco*, 552 F.3d at 995. Here, multiple FEs offer specific, corroborative details of the Defendants' mental state. For example, FE-2, FE-3 and FE-11 describe meetings with the Defendants, where Defendant Schuck provided directives to sell without regard to collectability consequences and was apprised of internal reports concerning declining demand. *See* ¶¶428-29. Specifically, FE-3 alleges that Defendants, including Schuck himself, directed and incentivized salespeople to engage in aggressive sales practices without performing due diligence. *Id.* FE-3 explained that the actions of the Company made the aggressive sales practices apparent, including, for example, not conducting credit checks and not requiring upfront payment. ¶429. Defendants pushed aggressive sales practices on salespeople and told the market that they monitored "engagement and usage of individual users." ¶433. Defendants' public statements, together with FE allegations, support scienter.

### 3.     Defendants' Post-Class Period Admissions Support Scienter

Shortly after the Class Period, Defendant Schuck admitted that the cause of the $33 million accounting charge was that "[ZoomInfo] **extended credit <u>historically</u> to customers who weren't creditworthy**." ¶445. Defendants argue that this statement does not show "when" the Company extended such credit. MTD at 24. However, Defendant Schuck's statement supplies the answer to their question: "**historically**," meaning going back in time. ¶445. Defendants' admissions support that they "always knew" about the risky sales practices ultimately leading to the write-down. *See Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. 2020).

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

29

### 4. Defendants' Close Monitoring Supports a Strong Inference of Scienter

Defendants' close monitoring of internal metrics indicates a "detail-oriented management style" that supports scienter. *Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004) (scienter where executives maintained a "detail-oriented management style" making them "aware of the allegedly improper conduct," by stating "I love getting involved in every detail of the business").

Defendants repeatedly touted their hands-on approach to tracking ZoomInfo's platform and customer engagement. For example, Defendant Hyzer, responding to questions about the "metrics that you report to the street" (*i.e.*, RPO), stated that "[t]hose are the metrics that **I wake up every day and like think about**, that Henry [Schuck] wakes up every day and thinks about." ¶435. Defendant Schuck also stated, "[t]here's **a whole bunch of data** that shows you the rhythm of the business. **Without visibility, you cannot properly run the business**." ¶434. These statements align with the FEs' accounts of Defendants taking part in reviewing data regarding the sustainability and profitability of ZoomInfo's sales growth. ¶436. Contrary to Defendants' argument, these statements go beyond a "general awareness of the day-to-day workings" (MTD at 22) and are directly related to Defendants' knowledge of ZoomInfo's subscription revenue. Specifically, these metrics concern demand, renewal, and retention of customers, which are directly relevant to scienter.

### 5. The Core Operations Doctrine Supports Scienter

ZoomInfo's subscription contracts are its entire business. ¶453. Courts observe that "knowledge of facts critical to a business's core operations" may be "impute[d] to a company's key officers." *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *19 (N.D. Cal. 2012). Accordingly, Defendants' knowledge of declining customer demand and subscription can be inferred because these facts were critical to ZoomInfo's core operations. Put simply, it would be "absurd to suggest" that Defendants did not have knowledge of problems associated with the Company's only revenue source. *Anderson v. Peregrine Pharms., Inc.*, 2013 WL 4780059, at *12 (C.D. Cal. 2013)

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

30

(applying core operations doctrine "to transactions worth millions of dollars or that represent a significant portion of the company's revenue").

Moreover, the Ninth Circuit has articulated that the core operations theory may support scienter if coupled with a finding of "specific admissions" by executives "of detailed involvement in the minutia of a company's operations, such as data monitoring." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). Here, Defendants made such admissions. Defendant Hyzer stated, ". . . **we're tracking internally** like usage on **all of these different products**, and where things are falling off. Where things are accelerating, and **making sure we're staying focused** on those metrics for the future." ¶433. Thus, the core operations doctrine supports scienter.

### 6.    SOX Certifications Support Scienter

Defendants purportedly complied with the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241 ("SOX"). Defendants Schuck and Hyzer attested that ZoomInfo's financial reporting was accurate and complete by signing SOX certifications. ¶448. Defendants' argument that SOX certifications "add nothing substantial" to a scienter analysis ignores the well-established holistic approach to the evaluation of scienter. *See Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (SOX certifications add "one more piece [to] the scienter puzzle").

### 7.    Defendant Hyzer's Departure Supports Scienter

Defendant Hyzer's abrupt departure as CFO, **on the same day** that ZoomInfo revealed the $33 million charge, also supports scienter. ¶¶456-58. *See Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *7 (N.D. Cal. 2017) (scienter "bolstered" by defendant's resignation); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1148 (N.D. Cal. 2017) (resignations close in proximity to corrective disclosure contribute to scienter). The circumstances surrounding the timing of Defendant Hyzer's abrupt departure support an inference of scienter.

### D.    The Complaint Sufficiently Pleads Scheme Liability

The Complaint sufficiently pleads Defendants' scheme to defraud investors in violation of Rule 10b-5(a) and (c). ¶¶459-461.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

31

The elements of a scheme-based claim include: (1) use or employment of any manipulative or deceptive device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the deceptive or manipulative act by investors; (5) economic loss; and (6) loss causation. *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009).

Defendants' argument—effectively that there is no "scheme" liability for the same reasons that there is no Section10b-5(b) liability—fails to address the Complaint's well-pled allegations and applicable case law. Specifically, Defendants sold subscription contracts to unvetted, risky customers, overstated RPO, and failed to write down bad debt while repeatedly issuing misleading statements to and omitting material facts from investors. ¶459. Meanwhile, Defendants unloaded **billions** of dollars in shares; seeking to profit off the backs of investors before ZoomInfo's stock inevitably collapsed once the truth was revealed. This was a textbook scheme. *See S.E.C. v. Richman*, 2021 WL 5113168, at *8 (N.D. Cal. 2021) (upholding scheme claim where "misleading . . . investors about the strength and sustainability of the company's business model when they allegedly knew that the walls were closing in around them" was a deceptive act).

**E.    The Complaint States a Claim for Control Person Liability**

To state a Section 20(a) claim, the Complaint must allege: (1) "a primary violation of federal securities laws []; and (2) that the defendant exercised actual power or control over the primary violator[]." *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). At the motion to dismiss stage, "general allegations concerning an individual's title and responsibilities to be sufficient to establish control." *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 875 (W.D. Wash. 2022). As set forth herein, the Complaint adequately alleges a primary violation of Section 10(b) against ZoomInfo and that Defendants indisputably exerted control over the Company and its misstatements.[13] *See* ¶¶89-91, 94, 462-68. Critically, Defendants Schuck, Hyzer, and Hays do not contest that they exercised actual control. *See* MTD at 28. Accordingly, Defendants are liable

---

[13] Defendants argue that the Complaint fails to state a claim against Defendant DO and incorporate by reference the companion brief filed by the Sponsor Defendants (ECF No. 87). Lead Plaintiffs incorporate their Opposition thereto (ECF No. 96) by reference as to Defendant DO and all Defendants, as applicable.

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CORRECTED AMENDED COMPLAINT

Case No. 3:24-cv-05739-TMC

32

under Section 20(a). *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605 (N.D. Cal. 2019) (sustaining Section 20(a) claim where defendants' "only argument" was that plaintiffs failed to allege a primary Section 10(b) violation against company).

## IV.    CONCLUSION

For all these reasons, Defendants' Motion should be denied in its entirety. If the Court grants any part of the Motion, Lead Plaintiffs respectfully request leave to amend.

DATED: July 25, 2025

**BYRNES KELLER CROMWELL LLP**

*s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
*s/ Joshua B. Selig*
Joshua B. Selig, WSBA #39628
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Tel: (206) 622-2000
Fax: (206) 622-2522
bkeller@byrneskeller.com
jselig@byrneskeller.com

*Liaison Counsel for the Proposed Class*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
James T. Christie (*pro hac vice*)
Jacqueline R. Meyers (*pro hac vice*)
Kaicheng Yu (*pro hac vice* forthcoming)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
mrogers@labaton.com
jchristie@labaton.com
jmeyers@labaton.com
nyu@labaton.com

*Counsel for Plaintiffs and*
*Lead Counsel for the Proposed Class*

**OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF OHIO**
Shawn Busken (*pro hac vice* forthcoming)
30 East Broad Street

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

33

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Columbus, OH 43215
Tel: (800) 282-0515
Shawn.Busken@OhioAttorneyGeneral.gov

*Additional Counsel for Plaintiffs*

I certify that this memorandum contains 10,943 words, in accordance with the parties' stipulation as approved by the Court on May 16, 2025 (ECF No. 83).

LEAD PLAINTFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS CORRECTED AMENDED
COMPLAINT
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

34