THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>ZOOMINFO TECHNOLOGIES, INC., et al.,<br><br>                              Defendants. | CASE NO. 3:24-cv-05739-TMC<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.**<br><br>**NOTE ON MOTION CALENDAR:** AUGUST 25, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION
TO DISMISS CORRECTED AMENDED COMPLAINT
BY TA ASSOCIATES MANAGEMENT, L.P. AND THE
CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................................................ii

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   SUMMARY OF ALLEGATIONS AS TO THE SPONSOR DEFENDANTS ................. 2

III.  LEGAL STANDARDS ................................................................................................... 5

IV.   ARGUMENT ................................................................................................................... 5

      A.    THE SPONSOR DEFENDANTS' SUBSTANTIAL STOCK SALES
            ARE INDICATIVE OF SCIENTER ................................................................. 5

      B.    THE SPONSOR DEFENDANTS ARE LIABLE UNDER SECTION
            10(b) AND RULE 10b-5(b)............................................................................. 10

      C.    THE SPONSOR DEFENDANTS ARE LIABLE UNDER SECTION
            10(b) AND RULE 10b-5(a) AND (c)............................................................... 11

      D.    THE SPONSOR DEFENDANTS ARE LIABLE AS CONTROL
            PERSONS UNDER SECTION 20(a)............................................................... 13

V.    CONCLUSION.............................................................................................................. 14

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION
TO DISMISS CORRECTED AMENDED COMPLAINT
BY TA ASSOCIATES MANAGEMENT, L.P. AND THE
CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                              i

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
  2013 WL 10914316 (C.D. Cal. 2013)................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................5

*Azar v. Yelp, Inc.*,
  2018 WL 6182756 (N.D. Cal. 2018) ..................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................5

*In re BioMarin Pharm., Inc. Sec. Litig.*,
  2022 WL 164299 (N.D. Cal. 2022) ....................................................................................9

*In re Century Aluminum Co. Securities Litigation*,
  729 F.3d 1104 (9th Cir. 2013) ...........................................................................................5

*Cesario v. Biocept, Inc.*,
  2025 WL 525120 (S.D. Cal. 2025) ...................................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .........................................................................................6, 7

*Courter v. CytoDyn, Inc.*,
  2025 WL 1771244 (W.D. Wash. 2025) ............................................................................13

*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) ...........................................................................................12

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) .............................................................................................6

*Ferreira v. Funko Inc.*,
  2021 WL 880400 (C.D. Cal. 2021)....................................................................................8

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) .................................................................................12

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
  97 F.4th 1171 (9th Cir. 2024) ......................................................................................5, 10

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

ii

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

*Howard v. Everex Systems, Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ........................................................................................13

*In re Impinj, Inc., Sec. Litig.*,
    414 F. Supp. 3d 1327 (W.D. Wash. 2019).......................................................................10

*In re Int'l Rectifier Corp. Sec. Litig.*,
    2008 WL 4555794 (C.D. Cal. 2008)..................................................................................9

*In re Intuitive Surgical Sec. Litig.*,
    65 F. Supp. 3d 821 (N.D. Cal. 2014) ................................................................................8

*Jaeger v. Zillow Group, Inc.*,
    644 F. Supp. 3d 857 (W.D. Wash. 2022)........................................................................13

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..........................................................................................................10

*Johnson v. Costco Wholesale Corp.*,
    2019 WL 6327580 (W.D. Wash. 2019) .............................................................................3

*Lapiner v. Camtek, Ltd.*,
    2011 WL 445849 (N.D. Cal. 2011) ...................................................................................8

*Lorenzo v. SEC*,
    587 U.S. 71 (2019)...........................................................................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)..............................................................................................................6

*McKenna v. Smart Techs. Inc.*,
    2012 WL 1131935 (S.D.N.Y. 2012).................................................................................14

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) .............................................................................6

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...............................................................................7, 10, 14

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) .......................................................................................6, 7

*In re OmniVision Techs., Inc. Sec. Litig.*,
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) .............................................................................8

*In re Questcor Sec. Litig.*,
    2013 WL 5486762 (C.D. Cal. 2013)..................................................................................7

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS CORRECTED AMENDED COMPLAINT BY TA
ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE
GROUP, INC.
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

*In re Rocket Fuel, Inc. Sec. Litig.*,
2015 WL 9311921 (N.D. Cal. 2015) ................................................................................10

*S.E.C. v. Richman*,
2021 WL 5113168 (N.D. Cal. 2021) ................................................................................12

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .............................................................................................7

*Simpson v. AOL Time Warner, Inc.*,
452 F.3d 1040 (9th Cir. 2006), *vacated on other grounds by Avis Budget Grp.,
Inc. v. Cal. State Tchr.* ....................................................................................................12

*Tellabs, Inc. v. Makor Issues & Rts.*,
551 U.S. 308 (2007)......................................................................................................5, 6

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ...........................................................................................7

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)........................................................................14

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) ...............................................................................9

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2022 WL 13800633 (C.D. Cal. 2022)...............................................................................11

**Statutes**

15 U.S.C. § 78t(a) ...................................................................................................................13

Securities Exchange Act of 1934

Securities Exchange Act Section 20 .................................................................................14

Securities Exchange Act Section 20(a)....................................................................2, 13, 14

**Rules and Regulations**

17 C.F.R. § 240.10b5-1.............................................................................................................9

Federal Rules of Civil Procedure

Rule 8 ...........................................................................................................................2, 13

Rule 12(b)(6)......................................................................................................................5

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.

Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

SEC Rule 10b-5 ...................................................................................................................13

SEC Rule 10b-5(a) ...........................................................................................................2, 11

SEC Rule 10b-5(b) ...............................................................................................2, 5, 10, 11

SEC Rule 10b-5(c) ...........................................................................................................2, 11

SEC Rule 10b5-1 .................................................................................................................8, 9

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.

Case No. 3:24-cv-05739-TMC                    v

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Court-appointed Lead Plaintiffs State Teachers Retirement System of Ohio and Ohio Public Employees Retirement System (collectively, "Lead Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendants TA Associates Management, L.P. ("TA Associates") and the Carlyle Group, Inc.'s ("Carlyle," collectively the "Sponsor Defendants") Motion to Dismiss ("Motion" or "MTD," ECF No. 87) Lead Plaintiffs' Corrected Amended Complaint ("Complaint," ECF No. 81).[1]

## I.    PRELIMINARY STATEMENT

Numbers don't lie.  The Sponsor Defendants collectively unloaded **more than \$7.5 billion** worth of their ZoomInfo Technologies Inc. ("ZoomInfo" or the "Company") shares during the Class Period.  As early investors of ZoomInfo and major shareholders, the Sponsor Defendants exerted significant control over and were heavily involved in the Company's business, management, and operations.  Acting on their intimate knowledge about the Company's day-to-day operations, the Sponsor Defendants, along with their co-Defendants, defrauded investors through the dissemination of false and misleading statements and omissions about the Company's purportedly sustainable growth, demand, and revenue.  Defendants' misstatements to the market artificially propped up the ZoomInfo's stock price while allowing the Sponsor Defendants, armed with inside knowledge vis-à-vis their extensive role in ZoomInfo's business, to dump their own shares—leaving investors holding the bag.

Through their Motion, the Sponsor Defendants now attempt to mischaracterize the Complaint's well-pled allegations by disavowing their own involvement, motive, and opportunity in Defendants' fraud.  Specifically, the Sponsor Defendants claim that because they were "early investors" in the Company, the Court should ignore the sufficiency of the allegations evidencing their participation in Defendants' fraud and conclude that the Sponsor Defendants simply exited

---

[1] Unless noted, all emphasis is added, internal citations and quotes are omitted, and all capitalized terms, including Defendants, Individual Defendants, and Sponsor Defendants have meanings set forth in the Complaint.  Citations to "¶__" are to the Complaint.

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P., AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

their ZoomInfo positions.  The Complaint, however, forecloses such a conclusion for several reasons.

**First**, the Sponsor Defendants demonstrably had "ultimate authority" over Defendants' misstatements, while simultaneously unloading **$7.5 billion** in their own holdings—which the Ninth Circuit has found to be "astronomical" and sufficient in supporting scienter—before the truth of their fraud emerged, and therefore cannot escape their liability under Section 10(b) and Rule 10b-5(b).

**Second**, the Sponsor Defendants are also liable under Section 10(b) and Rule 10b-5(a) and (c) because the Complaint alleges the nature, purpose, and effect of the Sponsor Defendants' fraudulent scheme to artificially inflate ZoomInfo's stock price.

**Third**, because under Rule 8's lenient pleading standards, the Complaint adequately alleges primary violations and the Sponsor Defendants' control over the primary violator, as evidenced by their significant influence over the Company's management, business, and operations, the Sponsor Defendants are liable as control persons under Section 20(a) of the Exchange Act.

Therefore, the Sponsor Defendants' Motion should be denied.

## II.    SUMMARY OF ALLEGATIONS AS TO THE SPONSOR DEFENDANTS[2]

ZoomInfo is a technology company that offers digital sales and marketing tools to businesses. ¶108. ZoomInfo sells its digital products through subscription contracts that typically come up for renewal annually.  ¶110.  ZoomInfo's customers are generally broken into three categories based on the size of their contract: (1) Enterprise; (2) Mid-Market; and (3) small and medium sized businesses ("SMBs").  ¶109.  Prior to the start of the Class Period, on June 4, 2020, the Company successfully completed its initial public offering ("IPO"). ¶116.

---

[2] So as not to create duplication and burden on the Court, Lead Plaintiffs incorporate by reference their complete Summary of Allegations as set forth in their Opposition to the MTD filed by the co-Defendants of the Sponsor Defendants.  *See* ECF No. 94 ("Opp. to Co-Defs.' MTD").  Lead Plaintiffs' Summary of Allegations herein is meant to highlight allegations most relevant to the sufficiency of claims against the Sponsor Defendants specifically.

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                2

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

But what the market did not know was that much of the Company's sky-high IPO valuation and euphoric outlook were built on and propped up by the Company's undisclosed strategy to sign up as many SMB customers as possible **without any due diligence**—many of which were unable or unwilling to pay their full contract amount. ¶¶112-132. To keep up its veneer of growth, Defendants manipulated the Company's Remaining Performance Obligations ("RPO"). ¶¶1. RPO is a financial metric that represents the value of all outstanding contracts for which a company has not yet recognized revenue and is subject to Generally Accepted Accounting Principles ("GAAP"). *See id.*

Throughout the Class Period, the Sponsor Defendants, as major shareholders of ZoomInfo, exercised significant control over the Company. ¶¶92-93, 463. Critically, the Sponsor Defendants "directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition." ¶463. Their significant voting power also allowed the Sponsor Defendants to "**significantly influence our management, business plans, and policies, including the appointment and removal of our officers, the composition of our Board of Directors, and decisions about whether to enter or not enter into significant transactions.**"[3]

---

[3] Specifically, ZoomInfo and the Sponsor Defendants, in their SEC Form 10-Ks, asserted repeatedly that:

> [E]ach of TA Associates, Carlyle, and our Founders have designated a director to serve on our Board of Directors. Carlyle and our Founders have the right to designate at least one of our directors for so long as they beneficially own at least 5% of the voting power of all shares of our outstanding capital stock entitled to vote generally in the election of our directors. For so long as any such party has a designee continuing to serve on our Board of Directors, they will be able to significantly influence our management, business plans, and policies, including the appointment and removal of our officers, the composition of our Board of Directors, and decisions about whether to enter or not enter into significant transactions.

Further, the Court may take notice of this fact as it is incorporated-by-reference. *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *13 (W.D. Wash. 2019) ("The Court may consider public filings, including SEC filings . . . where such documents are relied upon in the complaint").

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

3

Through this control, the Sponsor Defendants, along with their co-Defendants, issued false and misleading statements and omissions about the Company's revenue growth, purportedly sustainable product demand, and RPO metrics to prop up the Company's stock price. ¶¶491-506.

Unbeknownst to investors, however, Defendants internally saw declining demand and dismal engagement with ZoomInfo's products. ¶¶ 112-132. Nevertheless, to create the illusion that the Company's revenue pipeline remained strong, Defendants manipulated ZoomInfo's financial metrics, including overstatement of the Company's RPO figure. ¶¶112-125, 135-142. Acting on this material non-public information, throughout the Class Period, the Sponsor Defendants collectively unloaded **more than $7.5 billion** worth of shares, of which Defendant TA Associates sold **$3.54 billion** and Defendant Carlyle sold **$3.96 billion**. ¶¶185, 426.

Specifically, two days after Defendants' August 2, 2021 misstatements concerning the demand for ZoomInfo's products and RPO—which also sent the Company's stock to a near record-high of $66.58—the Sponsor Defendants orchestrated two non-dilutive secondary offerings[4], on August 6 and 11, 2021, to unload their existing shares. ¶¶166-67. In connection with the two offerings, the Sponsor Defendants cashed out over **$2.1 billion**. *Id*. As the Sponsor Defendants continued to sell at exorbitant gains, investors remained in the dark about the Company's mounting problems with collectability and declining demand. ¶¶185, 426.

Once the Sponsor Defendants had profited handsomely from unloading substantial portions of their holdings in the Company, the truth about their fraudulent scheme began to emerge through a series of partial disclosures beginning in late 2022 through mid-2024. ¶187. During this period alone, the revelation of Defendants' fraud wiped out nearly 60% of shareholder value. ¶¶191-223. Finally, on August 5, 2024, the market learned the full truth about the state of the Company's declining demand and stagnant growth when Defendants revealed that ZoomInfo was incurring a $33 million charge because the Company "**extended credit historically to customers who**

---

[4] A non-dilutive secondary offering conveniently allowed Defendants to unload their **existing** shares, whereas a dilutive secondary offering would have had only allowed them to sell newly issued shares. ¶¶166-67.

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

4

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

**weren't creditworthy**." ¶¶231, 445. Following the announcement, ZoomInfo's stock fell from $9.80 per share on August 5, 2024, to $8.01 per share on August 6, 2024, or approximately 18%—a roughly **90% decline** from the Class Period high of $77.35 per share. ¶¶176, 398, 460.

## III.    LEGAL STANDARDS

On a Rule 12(b)(6) motion, courts must consider the complaint in its entirety, "accept all factual allegations in the complaint as true[,]" and construe them in the light most favorable to plaintiffs. *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007). To avoid dismissal, a complaint "does not need detailed factual allegations," (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) but rather must simply "contain sufficient factual matter, [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Additionally, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

To state a claim under Section 10(b) and Rule 10b-5(b), a complaint must allege: "(1) a material misrepresentation or omission ('falsity'), (2) made with scienter, (3) in connection with the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024). The Sponsor Defendants challenge the Complaint as to the sufficiency of its scienter allegations and whether the Sponsor Defendants are liable under Section 10(b) as "makers" of the misstatements pled. The Complaint has adequately alleged both.

## IV.    ARGUMENT

### A.    THE SPONSOR DEFENDANTS' SUBSTANTIAL STOCK SALES ARE INDICATIVE OF SCIENTER

In assessing whether a complaint adequately pleads scienter, courts are instructed to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                          5

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

*Tellabs,* 551 U.S. at 310. Scienter is adequately pled when, taking the allegations as a whole, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quoting *Tellabs,* 551 U.S. at 324). A strong inference of scienter, "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Tellabs*, 551 at 324 (citation omitted). Instead, when viewed holistically, plaintiffs' inference of scienter must be "at least as compelling as any opposing inference" (*id*.) and, if the competing inferences are equally plausible, "a tie goes to the plaintiffs." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n. 8 (9th Cir. 2014).

The Sponsor Defendants' insider sales and their motive for "personal financial gain [] weigh heavily in favor of a scienter inference." *Tellabs*, 551 U.S. at 325. To determine whether insider sales are indicative of scienter, courts look to: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017) (citation omitted). Further, because no one factor is dispositive, courts should consider the three factors holistically. *See, e.g.*, *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (sales were suspicious and provide possible motive where "second and third factors neither weigh for nor against"). Here, the insider sales are suspicious and indicative of scienter.

**First**, the sheer number of shares that the Sponsor Defendants sold, and proceeds of those sales, are suspicious. When "stock sales result in a truly astronomical figure, less weight should be given to the fact that they may represent a small portion of the defendant's holdings." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (strong inference of scienter from $900 million in net sales). Here, the Sponsor Defendants collectively unloaded more than $7.5 billion worth of shares during the Class Period, of which Defendant TA Associates sold $3.54 billion and Defendant Carlyle sold $3.96 billion. ¶¶185, 426. Thus, the

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                6

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

"astronomical" amount of the Sponsor Defendants' sales alone should allow the Court to find the sales suspicious.[5] *Nursing Home Pension Fund, Loc. 144*, 380 F.3d at 1232.

Faced with their striking and revealing $7.5 billion in insider sales, the Sponsor Defendants instead quibble that because "the sales were spread out across a lengthy, multi-year class . . . period[,]" the amount of sales by the Sponsor Defendants does not support an inference of scienter. MTD at 9. This argument fails. The Sponsor Defendants cite to *In re Vantive Corp.* in support of their arguments. However, there, the Ninth Circuit held that the "unusually long class period" militated against the suspicious nature of the insider sales because the plaintiffs' allegations did not support an inference of fraud throughout the class period. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002). Those facts stand contrary to those here, where the Complaint adequately alleges misleading statements made as early as November 9, 2020. ¶¶235-62; *see* Opp. to Co-Defs.' MTD at 10-24. Therefore, "the length of the Class Period in this case suggests not that [p]laintiffs are grasping at straws to build their case, but rather that Defendants were able to ride the wave of their misleading marketing for the entire Class Period." *See In re Questcor Sec. Litig.*, 2013 WL 5486762, at *15 (C.D. Cal. 2013).

**Second**, the timing of the Sponsor Defendants' sales was suspicious and "calculated to maximize the personal benefit from undisclosed information." *City of Dearborn Heights*, 856 F.3d at 621 (citation omitted). Specifically, shortly after the November 18, 2020 misstatement assuring

---

[5] Cases cited by the Sponsor Defendants to urge the Court to overlook the $7.5 billion insider sales are distinguishable. MTD at 9. In *In re Silicon Graphics Inc. Sec. Litig.*, the defendant sold only 250,588 shares, and the court found the sales not suspicious mainly because the defendant was forbidden from selling any shares during the period in which the sale of 250,588 shares allegedly took place. 183 F.3d 970, 987 (9th Cir. 1999). And in *In re Vantive Corp. Sec. Litig.*, the court only noted that large sales alone "do not necessarily create a strong inference of fraud." 283 F.3d at 1093. However, here, when coupled with the suspicious timing of the sales, the Complaint's insider trading allegations raise a strong inference of scienter. *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003) ("Although large numbers [and percentages] do not necessarily create a strong inference of fraud, the numbers and percentages presented by Plaintiffs are troubling") (citation modified)).

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.

Case No. 3:24-cv-05739-TMC

7

that the "*shift is here to stay*" (¶265) and as soon as the lock-up period[6] had expired, the Sponsor Defendants decided to capitalize on the Company's success and exploding valuation, primarily inflated by the Company's undisclosed accounting manipulation and droves of unvetted, risky SMB customers.  ¶¶119-144, 153; *see* Opp. to Co-Defs.' MTD at 4-5, 10-24.  For example, on December 4, 2020, having not adopted a 10b5-1 plan, Defendants Carlyle and TA Associates cashed out approximately $518 million and $300 million, respectively.  ¶157.

Likewise, the timing of the Sponsor Defendants' largest blocks of insider sales was highly unusual.  Two days after Defendants' August 2, 2021 misstatements touting "*highest levels ever for both retention activity and customer engagement*"—which also sent the Company's stock to a near record-high of $66.58 per share—the Sponsor Defendants, together with the ZoomInfo Defendants, orchestrated two suspiciously-timed secondary offerings, on August 6 and 11, 2021.  ¶¶166-67; *see In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1110 (N.D. Cal. 2013) ("the timing can be considered suspicious in that the sales occurred near Class Period highs"); *see also In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 839 (N.D. Cal. 2014) (allegations that "Defendants sold their shares at times after [defendant company] learned of information that would adversely affect [its] stock, but before the public learned the information" supported inference of scienter).

Notably, the Sponsor Defendants opted for a non-dilutive secondary offering, which conveniently allowed them to unload their existing shares, rather than a dilutive secondary offering, which would have allowed them to sell only newly issued shares.[7]  ¶166.  Particularly, in connection with the August 6, 2021 Secondary Offering, without adopting a Rule 10b5-1 plan,

---

[6] The Sponsor Defendants agreed not to dispose or sell their shares of Class A common stock before December 2, 2020.  ¶153.

[7] Accordingly, *Lapiner v. Camtek, Ltd.* is distinguishable because in finding the insider sales not suspicious, the court reasoned that "nearly all of the sales occurred several weeks or more after any allegedly misleading statement, and none of the sales are alleged to have occurred at Camtek's peak price."  2011 WL 445849, at *7 (N.D. Cal. 2011); MTD at 9.  Likewise, *Ferreira v. Funko Inc.* is distinguishable because the defendants there sold only 8.8% of their holdings and the sales did not coincide with any alleged misstatements.  2021 WL 880400, at *29 (C.D. Cal. 2021).

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                    8

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Defendant TA Associates sold $527 million and Defendant Carlyle Group sold over $505 million. *Id*. Then, in connection with the August 11 Secondary Offering, without adopting a Rule 10b5-1 trading plan, Defendant Carlyle sold $523.1 million and Defendant TA Associates sold over $560.6 million. ¶167.

By October 2022, knowing that their fraudulent scheme would soon be revealed, just one month before the first partial corrective disclosure—after which ZoomInfo's stock price fell 29%—the Sponsor Defendants had already collectively unloaded $7.5 billion. ¶¶185, 191-92.

Finally, the Sponsor Defendants cannot use their 10b5-1 plans, which they adopted during the Class Period, to negate the effect of otherwise suspicious stock sales. MTD at 10; *see Azar v. Yelp, Inc.*, 2018 WL 6182756, at *18 (N.D. Cal. 2018) (10b5-1 plan "an affirmative defense to insider trading allegations only if the insider adopted the plan [b]efore becoming aware of the [material nonpublic] information" (citation omitted)). Indeed, courts in this Circuit routinely find that 10b5-1 trading plans do not negate an inference of scienter in similar circumstances. *See*, *e.g.*, *In re BioMarin Pharm., Inc. Sec. Litig.*, 2022 WL 164299, at *14 (N.D. Cal. 2022) (rejecting argument that "trades were nondiscretionary and pre-planned" because "concealing the negative information before the sale and setting the sale [to occur prior to the corrective disclosure] were discretionary choices"); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 885-86 (N.D. Cal. 2023) (same).[8] Here, the Complaint adequately alleges that the Sponsor Defendants entered into their plans with knowledge of the fraudulent scheme, thus making the timing of the 10b5-1 plans suspicious.[9] *See* Section B, *infra*.

[8] Defendants ignore that nothing about the 10b5-1 trading plan required them to sell when they did. *See* 17 C.F.R. § 240.10b5-1. Moreover, because Defendants have not provided the actual plans and without reviewing them, "the Court . . . cannot conclude that the plan negates any inference of scienter." *Azar*, 2018 WL 6182756, at 18-19. Separately, Defendants' submission of Exhibits 13, 14, and 15 is improper because the exhibits dispute the Complaint's allegations that the insider sales are suspicious and indicative of scienter. *See* ECF No. 95 ("RJN Opp.") at 5.

[9] Accordingly, *In re Int'l Rectifier Corp. Sec. Litig.* is distinguishable because the defendants there sold only $21 million and the sales were not suspiciously timed. 2008 WL 4555794, at *19 (C.D. Cal. 2008); *see* MTD at 10 n. 6. In addition, the Sponsor Defendants' sale of $2.1 billion in

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                    9

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Therefore, because of the suspicious nature of the Sponsor Defendants' insider sales, the more cogent, or at least equally compelling, explanation is that the Sponsor Defendants, along with the ZoomInfo Defendants, sought to cash out their investments at or near Class Period high before the market began to learn about the true state of the demand for ZoomInfo's products and the Company's overinflated RPO.[10]

## B. THE SPONSOR DEFENDANTS ARE LIABLE UNDER SECTION 10(b) AND RULE 10b-5(b)

Defendants are liable under Section 10(b) and Rule 10b-5(b) if they are the "maker of a statement" who have "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Courts in this Circuit have found that, to satisfy the *Janus* requirement, it is sufficient at the motion to dismiss stage to plead that the defendants "possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations." *In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *10 (N.D. Cal. 2015).

Here, the Complaint's allegations support a finding that the Sponsor Defendants had "ultimate authority" over the alleged misstatements made by ZoomInfo and the Individual Defendants. For instance, the Complaint alleges that Sponsor Defendants "were able to and did control the content of ZoomInfo's SEC filings, press releases, and other public statements issued by or on behalf of ZoomInfo during the Class Period."[11] ¶466. The Complaint also alleges that

---

connection with the two secondary offering were not made pursuant to their 10b5-1 trading plan. ¶¶166-67.

[10] Defendants' argument that Plaintiffs allege no prior trading history is misplaced because: (1) ZoomInfo became a publicly traded company mere months before the Class Period; (2) the Complaint alleges that none of the Defendants made sales after the Class Period; and (3) courts may not consider post-class period trading. ¶229; *see, e.g.*, *Am. W. Holding*, 320 F.3d at 939-40 (trades suspicious where no defendants sold for "at least four months following the class period").

[11] The Sponsor Defendants' cases are inapposite. *See* MTD at 6. In *Cesario v. Biocept, Inc.*, the court found no "maker" liability because the plaintiffs there alleged that the corporate defendants "have *sole responsibility* for the content of SEC disclosures and press releases," essentially foreclosing maker liability on the non-director defendants. 2025 WL 525120, at *12 (S.D. Cal. 2025) (emphasis in original). Likewise, *In re Impinj, Inc., Sec. Litig.* is distinguishable because as

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                    10

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

Defendants Carlyle and TA Associates "through their power and control over the Company, were aware of and/or had access to such information" and "would have been provided with copies of the statements made in the SEC filings at issue in this action before they were issued to the public and would have had the ability to prevent their issuance or cause them to be corrected."[12]  ¶¶154, 466; *see Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *11 (C.D. Cal. 2022) (allegations that defendants "were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected" sufficient to establish "ultimate authority").  ¶463.  Moreover, the Sponsor Defendants' "ultimate authority" over the alleged misstatements is further buttressed by their control over the Company.  *See* Section D, *infra*.  Accordingly, the Complaint adequately alleges Sponsor Defendants had "ultimate authority" over the alleged misstatements.

At bottom, because the Complaint adequately alleges the falsity of the statements (*see* Opp. to Co-Defs.' MTD at 10-24), the Complaint has adequately alleged a violation of Section 10(b) and Rule 10b-5(b) by the Sponsor Defendants.  Even if Sponsor Defendants were not to be found as the "makers" of the misstatements (they are), they are separately liable for a violation of Section 10(b) under Rule 10b-5(a) and (c), as discussed below.  *See* Section C, *infra*.

**C.  THE SPONSOR DEFENDANTS ARE LIABLE UNDER SECTION 10(b) AND RULE 10b-5(a) AND (c)**

Claims brought under Rule 10b-5(a) and (c) are referred to as "scheme liability" claims. *Lorenzo v. SEC,* 587 U.S. 71, 79-80 (2019).  While there is "considerable overlap" with "maker" liability under Rule 10b-5(b), the elements of a scheme-based claim include: (1) use or

---

discussed herein, the Complaint here adequately alleges the Sponsor Defendants were control persons and had more than "some role in the drafting, approving, and/or publishing of" the statements.  414 F. Supp. 3d 1327, 1335 (W.D. Wash. 2019).

[12] The Sponsor Defendants' categorization of the Complaint's allegation as "nothing more than speculation" must fail and is belied by the Company's public disclosures.  MTD at 12 n. 4; *supra* at n. 3.

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                11

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

employment of any manipulative or deceptive device or contrivance; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the deceptive or manipulative act by investors; (5) economic loss; and (6) loss causation. *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009). Notably, for scheme-based claims, a defendant need not "make" the material representation to be liable. *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Avis Budget Grp., Inc. v. Cal. State Tchr.' Ret. Sys.*, 552 U.S. 1162, 128 (2008). Instead, a plaintiff needs only plead that the defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Id.* at 1048.

Moreover, given that "the exact mechanism of the scheme is likely to be unknown to the plaintiffs, allegations of the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1193 (D. Or. 2015). Here, the nature of the scheme was to prop up ZoomInfo's stock price through mispresenting the sustainability of the Company's growth and demand. ¶459. The purpose of the scheme was to cash out as much as $8.6 billion before the truth was fully revealed. ¶460. The effect of the scheme was that Defendants collectively misled investors. ¶¶459-61.

Defendants baldly assert that the Complaint "does not allege a viable claim for 'scheme liability" and, thus TA Associates and Carlyle did not engage in any "inherently deceptive conduct that had the purpose and effect of misleading investors." MTD at 2. This is not so. Indeed, at the core of the Complaint's scheme liability allegations (¶¶459-61) is Defendants' coordinated effort to pump up ZoomInfo's stock price so that they could cash out their own holdings at top dollar. The Complaint describes how Defendants, including the Sponsor Defendants (who profited to the tune of **$7.5 billion**), employed artifices to artificially increase ZoomInfo's stock price by making the Company's sales growth appear profitable and sustainable, in furtherance of their textbook insider sales scheme. ¶459. Accordingly, the Sponsor Defendants are liable for their part in Defendants' scheme to defraud. *See S.E.C. v. Richman*, 2021 WL 5113168, at *8 (N.D. Cal. 2021)

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                    12

(upholding scheme claim where "misleading . . . investors about the strength and sustainability of the company's business model when they allegedly knew that the walls were closing in around them" was a deceptive act).

### D.    THE SPONSOR DEFENDANTS ARE LIABLE AS CONTROL PERSONS UNDER SECTION 20(a)

Because the Complaint adequately alleges primary violations of Section 10(b) and Rule 10b-5, to state a claim under Section 20(a), Lead Plaintiffs need only to show that Sponsor Defendants Carlyle and TA Associates had "control" over the primary violator. *See* 15 U.S.C. § 78t(a); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) ("In order to prove a prima facie case under § 20(a), plaintiff must prove: (1) a primary violation of federal securities laws []; and (2) that the defendant exercised actual power or control over the primary violator[]"). To plead the control element of a Section 20(a) claim, the relevant allegations must only meet the Rule 8's "relatively lenient pleading standards." *Courter v. CytoDyn, Inc.*, 2025 WL 1771244, at *15 (W.D. Wash. 2025).   Further, "courts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage." *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 875 (W.D. Wash. 2022).   Here, considering the Complaint's allegations altogether, the Court can find that Sponsor Defendants exercised control.

Throughout the Class Period, the Sponsor Defendants held "a significant percentage of the combined voting power immediately following ZoomInfo's secondary registered public offering held on August 9, 2021." ¶¶92-93.  Further, the Sponsor Defendants "directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition." ¶463.   The Sponsor Defendants' control and involvement are further strengthened by their significant influence over the Company's "management, business plans, and policies, including the appointment and removal of our officers, the composition of our Board of Directors, and

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC                    13

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

decisions about whether to enter or not enter into significant transactions." *Supra* at n.3; *see In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *37 (C.D. Cal. 2013) (allegations that "[defendants] intended to 'influence [the company's] management or the [b]oard with respect to [its] business and affairs ... and [that] the directors designated by [defendants] [might] have influence over the corporate activities of [the company]'" were indicative of control).

Defendants also argue that absent allegations of "collective action" among Sponsor Defendants, the combined voting power of Sponsor Defendants cannot amount to control. MTD at 15. However, this argument ignores the Complaint's allegations concerning the control exercised by each of the Sponsor Defendants. *Supra* at n. 3; ¶¶92-93. Further, courts have indeed upheld control person liability under similar circumstances. *See Am. W. Holding*, 320 F.3d at 946 (9th Cir. 2003) (private equity firms exercised control in part when "TPG and Continental were the largest stockholders of America west, controlling approximately 57.4% of the total voting power"); *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *20 (S.D.N.Y. 2012) (defendants exercised control through collective voting power).[13]

Taken together, the Complaint adequately alleges that the Sponsor Defendants were control persons under Section 20(a).

## V.   CONCLUSION

For all these reasons, the Sponsor Defendants' Motion should be denied in its entirety.

---

[13] "Because the control person analysis does not differ between § 15 of the Securities Act and § 20 of the Exchange Act," the *McKenna* court's analysis of the Section 15 claim should be applied with equal force to the control person claim herein. *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1220 (W.D. Wash. 2009) (citing *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1578 (9th Cir.1990)).

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS CORRECTED AMENDED COMPLAINT BY TA
ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE
GROUP, INC.
Case No. 3:24-cv-05739-TMC                                          14

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor,
Seattle, WA 98104
Telephone: 206-622-2000 • Fax: 206-622-2522

DATED: July 25, 2025

**BYRNES KELLER CROMWELL LLP**

*s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
*s/ Joshua B. Selig*
Joshua B. Selig, WSBA #39628
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Tel: (206) 622-2000
Fax: (206) 622-2522
bkeller@byrneskeller.com
jselig@byrneskeller.com

*Liaison Counsel for the Proposed Class*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
James T. Christie (*pro hac vice*)
Jacqueline R. Meyers (*pro hac vice*)
Kaicheng Yu (*pro hac vice*)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
mrogers@labaton.com
jchristie@labaton.com
jmeyers@labaton.com
nyu@labaton.com

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Proposed Class*

**OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF OHIO**
Shawn Busken (*pro hac vice* forthcoming)
30 East Broad Street
Columbus, OH 43215
Tel: (800) 282-0515
Shawn.Busken@OhioAttorneyGeneral.gov

*Additional Counsel for Lead Plaintiffs*

I certify that this memorandum contains 4,093 words, in compliance with the Local Civil Rules

LEAD PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.
Case No. 3:24-cv-05739-TMC

15