THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM,

Plaintiff,

v.

ZOOMINFO TECHNOLOGIES INC., et al.,

Defendants.

Case No. 3:24-cv-05739-TMC

CLASS ACTION

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR:** AUGUST 25, 2025

**ORAL ARGUMENT REQUESTED**

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A. Plaintiffs Do Not State a Claim Under Section 10(b)........................................... 2

        1. The Complaint Does Not Allege a False or Misleading Statement .......... 2

            a) Plaintiffs Fail to Plead That the RPO Estimates Were Misleading....................................................................................... 2

            b) The Oral Statements Are Not Actionable ..................................... 7

        2. Plaintiffs Fail to Allege a Strong Inference of Scienter ............................ 9

            a) The FEs Do Not Support a Strong Inference of Scienter............... 9

            b) Allegations of "Close Monitoring" and the Core Operations Doctrine Do Not Support a Strong Inference of Scienter ............ 10

            c) The Post-Class Period Statements Are Not "Admissions".......... 10

            d) SOX Certifications and Mr. Hyzer's Departure Do Not Support a Strong Inference of Scienter....................................... 11

            e) Defendants' Stock Sales Do Not Support a Strong Inference of Scienter ................................................................................... 11

    B. Plaintiffs Do Not State A Scheme Liability Claim.............................................. 12

    C. Plaintiffs Do Not State A Control Person Claim. ............................................... 12

III. CONCLUSION................................................................................................ 12

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

## **TABLE OF AUTHORITIES**

**Cases**                                                                            **Page(s)**

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ................................................................................7

*City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) ...........4, 11

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................................................2

*In re Daou Sys.*,
   411 F.3d 1006 (9th Cir. 2005) ..............................................................................................6

*In re Dermtech, Inc. Sec. Litig.*,
   2025 WL 1618193 (S.D. Cal. June 5, 2025) .......................................................................4, 6

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ......................................................................4

*Hurst v. Enphase Energy, Inc.*,
   2021 WL 3633837 (N.D. Cal. Aug. 17, 2021) .....................................................................6

*Kampe v. Volta Inc.*,
   2024 WL 308262 (N.D. Cal. Jan. 26, 2024) .........................................................................7

*Kang v. PayPal Holdings, Inc.*,
   620 F. Supp. 3d 884 (N.D. Cal. 2022) .................................................................................12

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................2

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ................................................................................4

*Metzler Inv. GMBH v. Corinthian Coll., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ...........................................................................................10, 11

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ................................................................................................8

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
   2020 WL 2559939 (N.D. Cal. May 20, 2020) ......................................................................3

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ..................................................................................9

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

## TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                                    **Page(s)**

*Rodriguez v. Kwok*,
     2014 WL 889570 (N.D. Cal. Mar. 3, 2014)...............................................................................6

*SEC v. Richman*,
     2021 WL 5113168 (N.D. Cal. Nov. 3, 2021) ..........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007)..................................................................................................................2

*In re Vantive Corp. Sec. Litig.*,
     283 F.3d 1079 (9th Cir. 2002) ................................................................................................12

*Zucco Partners, LLC v. Digimarc Corp*,
     552 F.3d 981 (9th Cir. 2009) ..................................................................................9, 10, 11, 12

**Statutes and Rules**

15 U.S.C.
     § 78u-4(b)(1), PSLRA ....................................................................................... *passim*

17 C.F.R.
     § 240.10b5, SEC Rule 10b-5(a)-(c) ........................................................................................12

Fed. R. Civ. P.
     Rule 9(b) ...............................................................................................................................1, 2
     Rule 12(b)(6).............................................................................................................................3

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC                          - iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

## I.    **INTRODUCTION**[1]

Though Plaintiffs allege that Defendants' statements were misleading because ZoomInfo failed to conduct customer credit checks in "***violation of ASC 606***," Opp. 11, Plaintiffs cannot cite any authority to show that ASC 606 required ZoomInfo to perform credit checks. This is because ***no such rule exists***. As the Motion demonstrates, ASC 606 does not set forth any required procedure and permits companies to use estimates based on historical experience to assess the collectability for a portfolio of contracts, just as ZoomInfo disclosed that it did during the Class Period. ZoomInfo's method for assessing collectability and estimating RPO satisfied the requirements of ASC 606, and its approach was endorsed by its independent external auditor. Because ASC 606 did not require ZoomInfo to perform individualized credit checks, Plaintiffs cannot base a securities fraud claim on the Company's purported failure to perform credit checks, and the Complaint must be dismissed on that basis alone.

The Complaint must also be dismissed because Plaintiffs fail to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b). Plaintiffs do not allege any specific facts to show that ZoomInfo ever violated ASC 606, or any other accounting rule that governs RPO estimates. As statements of opinion, ZoomInfo's forward-looking RPO estimates are also inactionable because Plaintiffs do not allege specific facts to show they were subjectively false when made. Indeed, not one of the FEs is alleged to have ever discussed RPO accounting with any Defendant at all.

Nor have Plaintiffs identified any misleading oral statements where none of the FE allegations are contradictory to or inconsistent with Defendants' statements. And Plaintiffs do not meaningfully dispute that the challenged oral statements are also legally inactionable for a number of additional reasons, including that they are puffery, forward-looking, and statements of opinion.

The Complaint must also be dismissed because Plaintiffs do not allege particularized facts creating a strong inference of scienter. Plaintiffs offer no facts to show that any Defendant was aware of improper accounting or other information that would contradict the challenged statements, and while Plaintiffs try to impugn the Individual Defendants' Class Period stock sales as excessive, those

---

[1] All short forms are taken from Defendants' Motion to Dismiss ("Motion" or "Mot."). Plaintiffs' opposition is referred to as the "Opposition" or "Opp.," and all emphasis is added unless otherwise noted.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 1 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

sales were made pursuant to nondiscretionary trading plans and are not alleged to be irregular in any way. At bottom, when considered holistically, the most compelling inference is that there was no fraud here, and that ZoomInfo reported its RPO estimates honestly throughout the Class Period.

## II.    ARGUMENT

### A.    Plaintiffs Do Not State a Claim Under Section 10(b)

Plaintiffs try to downplay the stringent pleading requirements that govern here, Opp. 10, but the cases they cite confirm that the PSLRA and Rule 9(b) require Plaintiffs to "state *with particularity* the circumstances constituting fraud" and allege specific *facts* to show the "who, what, when, where, and how" of the alleged fraud. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1007 (9th Cir. 2018). Plaintiffs also wrongly accuse Defendants of presenting "alternate facts" by citing to judicially noticeable documents like the text of ASC 606 and ZoomInfo's SEC filings, Opp. 10, but the Court "must consider … *documents incorporated into the complaint by reference, and matters of which a court may take judicial notice*," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). And the Court is not "required to accept as true allegations that contradict ... matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

#### 1.    The Complaint Does Not Allege a False or Misleading Statement

##### a)    Plaintiffs Fail to Plead That the RPO Estimates Were Misleading

Plaintiffs allege ZoomInfo's RPO estimates were overstated because the Company failed to "adequately assess" contract collectability "[in] violation of ASC 606." Opp. 11. According to Plaintiffs, ASC 606 required ZoomInfo to perform a pre-emptive credit check on each customer to determine the likely collectability of each contract. ¶21.[2] But that claim fails as a matter of law because *ASC 606 does not contain a credit check requirement*, and in fact specifically provides that assessing collectability requires the use of *judgment*, and can be based on estimates and historical experience. Mot. 4-5, 11-13.[3] Plaintiffs are unable to cite any authority to show that ASC 606 requires

---

[2] All references to "¶_" are to the Amended Complaint, ECF 76.

[3] Plaintiffs encourage the Court to consider KPMG's guidance on ASC 606. Opp. 17 n.4 ("KPMG Guidance"). As the KPMG Guidance states on the first line of the first page: "The application of Topic 606 is not a simple one-time exercise—

pre-emptive credit checks—indeed, neither the Complaint nor the Opposition cites to any specific provision of ASC 606 *at all*. That flaw is fatal to Plaintiffs' RPO estimate allegations.

But even before the Court reaches the substance of ASC 606, Plaintiffs' challenge to the RPO estimates fails because RPO estimates constitute statements of opinion, and Plaintiffs do not allege that they were both subjectively and objectively false when made. Mot. 10-13. Plaintiffs cite *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2020 WL 2559939, at *21 (N.D. Cal. May 20, 2020) to argue that revenue disclosures pursuant to ASC 606 exist "in the realm of 'fact' rather than 'opinion,'" Opp. 17, but *Granite* concerned revenue disclosures of "*existing*, rather than future, overruns," which are plainly statements of fact, 2020 WL 2559939 at *5. Plaintiffs here challenge Defendants' forward-looking *estimates* of "*future* revenue," ¶143, or "the amount of revenue the Company *expected* to receive," ¶133, which are necessarily judgment-based statements of opinion.

None of the FEs alleges that any Defendant *subjectively* believed the RPO estimates were inaccurate or violated ASC 606. Mot. 10. Plaintiffs do not dispute that point, Opp. 18, which alone demands dismissal of the RPO estimate allegations, Mot. 10 (citing *Bao v. SolarCity Corp.*, 2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (dismissing allegations where "not a single confidential witness alleges that Defendants knew of the accounting error central to this case")). Plaintiffs insist the FE allegations show that Defendants knew of *other* potential problems at ZoomInfo that *could have* led to improper accounting, Opp. 18, but there are no particularized facts alleged to show (i) when or how these alleged problems purportedly factored into ZoomInfo's RPO estimates, let alone (ii) that any Defendant had a personal belief about the accuracy of the Company's ASC 606 accounting.

Plaintiffs also fail to allege that the RPO estimates were *objectively* false when made. Mot. 10. The Complaint is devoid of *any* substantive, specific allegations about ZoomInfo's accounting data, calculations, or actual method of estimating RPO, and Plaintiffs' *entire* RPO accounting case rests on the incorrect contention that ASC 606 requires credit checks, and on the vague opinion of a junior accountant that the company's methods were not "proper."

---

it requires *significant judgment* [and] *estimation*." https://kpmg.com/kpmg-us/content/dam/kpmg/frv/pdf/2024/handbook-revenue-recognition-1224.pdf, at 1.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

As the Complaint admits, ZoomInfo never claimed that it performed credit checks, and disclosed that it accounted for variable consideration under ASC 606 using "estimates based on historical experience." ¶134 n.14; Mot. 5. ZoomInfo's independent auditor, KPMG, was responsible for reviewing the Company's RPO methodology and issued unqualified audit opinions for each of the financial reports containing the RPO estimates, attesting to their accuracy. *See City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1113-14 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (the uncontested fact that "Sterling's independent auditors consistently provided unqualified opinions for Sterling's financial results" weighed against a finding of falsity).[4]

Plaintiffs insist the Court should disregard ZoomInfo's disclosures about its accounting methodology, and argue the Court is ***forbidden*** from considering the very accounting standard upon which Plaintiffs base their claim. ECF 95 at 4. But ASC 606 is incorporated by reference into the Complaint ***and*** properly the subject of judicial notice. It forecloses Plaintiffs' false allegation that ASC 606 required ZoomInfo to account for RPO estimates using credit checks. Mot. 4-5.[5]

Not only does ASC 606 permit various methods of analysis, it specifically contemplates a collectability evaluation that is consistent with ZoomInfo's judicially noticeable disclosures. Plaintiffs argue that Defendants are improperly trying to introduce "a new fact—ZoomInfo's purported use of the 'portfolio approach' in assessing collectability under ASC 606." Opp. 11. But ZoomInfo's use of the portfolio method is not a "new fact," because ***as the Complaint alleges***, ZoomInfo's SEC filings disclosed that the Company accounted for variable consideration under ASC 606 using "estimates ... based on historical experience." ¶134 n.14; Mot. 4-5.[6] Plaintiffs also falsely assert that "ZoomInfo's use of such approach is not readily apparent from its SEC filings," Opp. 11,

---

[4] Plaintiffs argue KPMG's certification of ZoomInfo's financials cannot be used to "demonstrate the accuracy of ZoomInfo's RPO figures," Opp. 16, but the cases they cite, unlike here, concern auditor certifications that "did not specifically discuss the time periods at issue" or "undert[ake] an assessment of [the] internal control" being challenged, *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008), or that were issued in connection with financials that were subsequently restated, *In re Dermtech, Inc. Sec. Litig.*, 2025 WL 1618193 at *5-6 (S.D. Cal. June 5, 2025).

[5] It is well-established that Defendants can use the "doctrine[] of ... incorporation by reference to" refute "a plaintiff's conclusory allegations." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020).

[6] Plaintiffs further argue that "Defendants' assertion that they purportedly used this methodology stands at odds with the well-pled facts" of the Complaint, Opp. 12, but again, the Complaint ***quotes*** ZoomInfo's disclosure regarding its accounting under ASC 606, ¶134 n.14, and does ***not*** dispute that the Company used that method. Indeed, FE-3 admits that ZoomInfo used variable accounting, but quibbles with how it was employed. ¶¶134, 139.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

but again, Plaintiffs *cite the disclosure in the Complaint*, and Plaintiffs cannot bury their heads in the sand and ignore the publicly available disclosures that conflict with their conclusory allegations.

ASC 606 provides that when a company is assessing "collectability" it must "use judgment and consider all of the facts and circumstances, including the entity's customary business practices." ASC 606-10-55-3B. ASC 606 further provides an entity "may apply this guidance to a portfolio of contracts." ASC 606-10-10-4. The rule is unambiguous: "When accounting for a portfolio, an entity *shall use estimates and assumptions* that reflect the size and composition of the portfolio." *Id.* Plaintiffs selectively quote PwC's discussion of ASC 606 to insist that even under the portfolio method, "[b]efore accepting a new customer," a company must "perform ... credit check procedures." Opp. 16. But as the Court can see for itself, PwC's guidance does not say anything about a mandatory credit check requirement and, in fact, states that "[i]t is not uncommon for a reporting entity's *historical experience* to indicate that it will not collect all of the consideration related to a portfolio of contracts," RJN Ex. 3, p. 2-16.

Plaintiffs accuse Defendants of improperly "assess[ing] the collectability of ZoomInfo's growing customer base," Opp. 11, but fail to understand that the portfolio method is itself a method *for assessing collectability*. In fact, the KPMG Guidance Plaintiffs cite answers the question "**How should an entity assess collectability for a portfolio of contracts?**" with:

> [I]n some situations, an entity may use a portfolio of historical data to estimate the amounts that it expects to collect. This type of analysis may be appropriate when an entity has a high volume of homogeneous transactions. These estimates are then used as an input into the overall assessment of collectability for a specific contract.

KPMG Guidance at 82.[7]

Of course, because Plaintiffs have failed to allege ZoomInfo acted in contravention of any actual accounting standard, the Court need not even assess ZoomInfo's use of the portfolio method. Nevertheless, Plaintiffs now attack ZoomInfo's disclosed methodology as well, arguing in their Opposition that the portfolio method is a "shortcut [to be used only] in instances where a company

---

[7] Plaintiffs assert that "Defendants appear to be arguing that ZoomInfo had no obligation to assess creditworthiness as a part of its collectability assessment." Opp. 6. Wrong. ZoomInfo in fact assessed collectability using the portfolio method.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC
- 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

has a predictable, consistent customer base," and that "ZoomInfo had neither the historical customer base nor the ability to use such a shortcut." Opp. 12 (citing ¶¶112-25, 135-42). But that is not alleged in the Complaint, and Plaintiffs cannot use their Opposition brief to amend the Complaint. *See Rodriguez v. Kwok*, 2014 WL 889570, at \*6 (N.D. Cal. Mar. 3, 2014).[8] Moreover, Plaintiffs' conclusory disagreement with ZoomInfo's disclosed accounting method is not sufficient to establish a violation of ASC 606, particularly given the clean audit opinions the Company consistently received. *See Hurst v. Enphase Energy, Inc.*, 2021 WL 3633837, at \*4 (N.D. Cal. Aug. 17, 2021) (dismissing claim based on allegedly improper application of ASC 606 because "Plaintiff fails to plead any facts illustrating that Enphase exercised its judgment in a way that violated GAAP" and it is "Plaintiff who shoulders the heavy burden of pleading facts to support the notion that the way Enphase deferred its revenue violated GAAP").

Plaintiffs simply do not allege the required specific facts to show that ZoomInfo's RPO accounting was wrong at any time, or by how much, such that any of the challenged RPO estimates would have been materially misleading when made. Mot. 11-13 (citing *Kampe v. Volta Inc.*, 2024 WL 308262, at \*11 (N.D. Cal. Jan. 26, 2024)). Plaintiffs argue they are not required to allege specifics, and need only allege "'basic details'—including ... dates ... or [the] approximate amount involved in the fraud," Opp. 15, but Plaintiffs are wrong on the law, Mot. 11-13,[9] and, in any event, they do ***not*** allege any specific dates or even ***attempt*** to allege the approximate amount by which any specific RPO estimate was allegedly overstated. Only FE-3 is alleged to have any knowledge of ZoomInfo's accounting practices, and while FE-3 expresses conclusory disagreements with the Company's accounting, FE-3 "fail[s] to support their allegations with concrete and readily verifiable figures or explanations." Mot. 12 (citing *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at \*13 (N.D. Cal. Nov. 14, 2016)). The other FEs are not alleged to have "performed an accounting function or aver

---

[8] Plaintiffs also now assert that "Defendants purposefully chose to apply the 'portfolio approach' in a completely inapplicable operational reality because they knew that method would not account for new, uncreditworthy customers and, thus, allowed Defendants to issue misleadingly inflated RPO figures." Opp. 12 n.2. But Plaintiffs cannot cite to where that is alleged in the Complaint, because it is not. *Id.*

[9] *See also In re Daou Sys.*, 411 F.3d 1006, 1018 (9th Cir. 2005) (plaintiffs stated a claim for accounting fraud where they "provided figures allegedly indicating the discrepancy between the revenues Daou recognized and the amount that it was entitled to bill its customers during certain quarters within the class period."); *Dermtech*, 2025 WL 1618193 at \*5-6 ("plaintiff must alleg[e] specific facts concerning particular transactions during the … time period that violated GAAP").

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 6 -

any facts that would permit the Court to reasonably infer that [they were] was in a position to have reliable information about [ZoomInfo's] accounting practices and, specifically, about whether [ZoomInfo accounted for RPO estimates] in violation of ASC 606," *Kampe*, 2024 WL 308262, at *13, and thus their allegations cannot be used to state a claim for accounting fraud, Mot. 8-9, 13. Plaintiff is right that there is "no requirement that the FE[s] ***observe*** 'facts first-hand,'" Opp. 13, but they must at least have "personal knowledge of Defendants' accounting decisions," *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1114 (N.D. Cal. 2009), which none of the other FEs are alleged to have.[10]

### b)   The Oral Statements Are Not Actionable

The Motion demonstrates multiple reasons why Defendants' challenged oral statements are not actionably misleading. Mot. 13-19. ***First***, Plaintiffs do not allege any specific contemporaneous facts that are inconsistent with the challenged oral statements. *Id.* at 13.[11] Plaintiffs argue the oral statements are misleading because they failed to disclose the Company was not properly "vetting [customers'] ability to pay for their subscriptions." Opp. 18, but as discussed above, no such obligation existed, and the Company in fact collected substantially all of it RPO for each year of the Class Period. Regardless, none of the statements refers to anticipated collections on existing contracts or RPO accounting and therefore could not be misleading in that respect. Mot. 14.

Plaintiffs also do not dispute that the FEs mostly allege information that had already been disclosed by ZoomInfo, including with regard to contractual autorenewal provisions, and none of the FEs alleges any specific facts that contradict any of the challenged oral statements. *Id.* at 12-14. Plaintiffs argue that Defendants' statements about "[s]trength ... across all areas of the business" and a "new high watermark of customer contract spending" were misleading in light of FE allegations about "Defendants' directive not to perform payment due diligence." Opp. 19. But Plaintiffs do not actually dispute that receipts from customers were indeed then at an all-time high, nor do the

---

[10] Plaintiffs assert that the Complaint alleges sufficient facts to show the other FEs were credible and "positioned to set forth the allegations attributed to them," Opp. 14, but the other FEs' credibility is irrelevant because they do not claim to have any knowledge about ZoomInfo's accounting decisions.

[11] Plaintiffs' oral statement allegations suffer a temporal disconnect, as well, with many of the alleged "adverse facts" occurring ***after*** the allegedly misleading statements were made (*e.g.*, alleging statements made in 2020 were misleading because of a marketing report issued in 2021). *See, e.g.,* ¶¶35, 236, 252.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC
- 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

challenged statements imply anything about customer diligence or collectability estimates. These factually accurate statements cannot be misleading under these circumstances, Mot. 14-15, and general statements about "strength" are inactionable puffery in any event, *id.* at 17-18.

*Second*, many of the challenged oral statements are "disclosure[s] of accurate historical data accompanied by general statements of optimism" that are "not actionable" as a matter of law. Mot. 17.[12] Plaintiffs argue that historical results can be actionable where they falsely represent the reasons for those historical results, Opp. 19, but in contrast to the cases Plaintiffs cite, there are no allegations here that ZoomInfo touted false reasons for the challenged results, let alone specific factual allegations to show that those reasons were false when given.[13]

*Third*, many of the oral statements are inactionable statements of optimism or puffery. Mot. 17-18. Plaintiffs argue the puffery statements are actionable because "because Defendants' knew that ZoomInfo's ballooning subscriber base was due to its lack of due diligence, rather than demand," Opp. 22 (citing ¶¶112, 158-61), but none of those cited paragraph alleges any specific facts to support that conclusory assertion. Plaintiffs also assert Defendants' statements about the "strong retention in upsell activity" and "strong performance ... [m]etrics ... when compared to our competition" are "capable of objective verification and thus not puffery," Opp. 22, but even if that were true, there are no facts alleged to show that ZoomInfo did not have "strong retention" or "strong performance metrics" when those statements were made.

*Fourth*, Plaintiffs misquote two of Mr. Schuck's opinion statements to argue that they are actionable statements of fact. Opp. 20. Plaintiffs omit critical qualifiers from Mr. Schuck's statements that render them incontrovertible statements of personal belief. ¶265 ("***we feel pretty confident*** that shift is here to stay"), ¶278 ("***so [we] really felt*** that ... the results were pretty broad-based improvement"). Plaintiffs also argue that, even if the statements are opinions—and they are—the statements are actionable because they omitted that "ZoomInfo observed a decline in demand and its success was due to risky and unsustainable business practices." Opp. 21 (citing ¶¶265-71, 278-82).

---

[12] Plaintiffs also cite *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008), but that case is inapposite because it concerns claims brought under the Securities Act, which are not subject to the PSLRA's stringent pleading requirements.

[13] Plaintiffs argue that Defendants "falsely attribute[ed] ZoomInfo's record revenue to business strength, momentum, and upsell activity," Opp. 20, but do not and cannot cite any specific facts to show why or how those statements were false.

But none of those cited paragraphs specifically alleges that ZoomInfo had "observed a decline in demand" at the time the statements were made, let alone that Mr. Schuck then knew of it.

*Fifth*, three of the oral statements were forward-looking and accompanied by meaningful cautionary language and therefore inactionable under the PSLRA. Mot. 19.[14] Plaintiffs argue that because they statements are couched in the present tense, they are not forward-looking, "[or] at minimum, [are] mixed statements." Opp. 23. But the truth or falsity of the statements could not be determined until future events occurred, so the statements are deemed forward-looking under the law. Mot. 19 (citing cases). Plaintiffs also argue that the cautionary language was not "meaningful," Opp. 23, but in contrast to the authority Plaintiffs cite, the risk warnings here "precisely and directly address" the subject matter of the alleged misrepresentations. *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 738 (N.D. Cal. 2022); Mot. 19 (collecting cases).

### 2.    Plaintiffs Fail to Allege a Strong Inference of Scienter

#### a)    The FEs Do Not Support a Strong Inference of Scienter

Plaintiffs argue that the Complaint's FE allegations "corroborate" Defendants' mental state and are "plainly indicative of Defendants' scienter." Opp. 28-29. Not so. As explained in the Motion, the Complaint does not cite a single FE who claims to have communicated with any Individual Defendant about the alleged accounting issues, or who provides any basis to infer that any Defendant was aware of, or recklessly disregarded, the supposed problems with RPO accounting. Mot. 20-21. Plaintiffs instead rely on the FEs' alleged general impressions of company culture, sales practices, or internal processes, but the Ninth Circuit has made clear that "generalized claims about corporate knowledge [or culture] are not enough." *Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 996 (9th Cir. 2009).

Plaintiffs also argue that allegations about the FEs' "job descriptions" and "reporting structure" suffice to show the requisite degree of personal knowledge. Opp. 28. But the law requires more: FEs must have "reliable personal knowledge of the defendants' ***mental state***." *Id*., at 998. Here,

---

[14] Plaintiffs argue that the first portion of the statement alleged at ¶296—"we are seeing an incredibly healthy demand environment" that "is fueled by a secular tailwind"—is not forward-looking. Opp. 22. But Defendants do not argue that it is. They argue that the latter part of that statement—"[a]nd we really do feel today that the pandemic environment is very far behind us and we rebounded to sort of the pre-pandemic demand environment"—is forward looking. Mot. 19.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC                    - 9 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

the FEs' statements are either (i) not linked to any Individual Defendant, (ii) based on speculation or hearsay, or (iii) too vague and generalized to support an inference of scienter. Mot. 20-21. And putting aside the FEs' lack personal knowledge of the Individual Defendants' mental states, the FEs also do not provide any information that contradicts any of the challenged statements.

### b) Allegations of "Close Monitoring" and the Core Operations Doctrine Do Not Support a Strong Inference of Scienter

Plaintiffs argue that Defendants' alleged "close monitoring" of a vaguely-described "whole bunch of data" supports an inference of scienter. Opp. 30. But Plaintiffs never identify a single metric in any internal data set allegedly monitored by Defendants that conflicted with Defendants' public reporting when made. Absent that nexus, vague allegations of "close monitoring" of unspecified data are insufficient. *Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008).

Nor does the core operations doctrine help Plaintiffs. That doctrine applies where the falsity of the statements would have been "patently obvious." *Zucco*, 552 F.3d at 1001. Plaintiffs' bare assertion that "subscriptions … [were the Company's] entire business," Opp. 30, is not enough to satisfy that high bar, particularly where Plaintiffs do not allege that the Individual Defendants were involved in the relevant accounting decisions and, in any event, the decisions did not involve "a simple one-time exercise" and instead "require[d] significant judgment [and] estimation." KPMG Guidance at 1.

### c) The Post-Class Period Statements Are Not "Admissions"

Mr. Schuck's post-Class Period comment that the cause of the $33 million charge was that "[ZoomInfo] extended credit historically to customers who weren't creditworthy" is not an "admission" of scienter because it says nothing about *when* he came to his understanding about the Company's historical credit practices. Opp. 29. Plaintiffs argue the irrelevant point that Mr. Schuck's statement identified the time when the Company extended credit to customers who were not creditworthy—"historically." *Id.* But Plaintiffs ignore the actual question relevant to the scienter analysis: *when* did Mr. Schuck purportedly learn the alleged relevant facts underlying his post-Class Period statement? The Complaint offers no answer.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 10 -

As to Mr. O'Brien's purported "admissions," the Opposition does not even attempt to respond to the Motion's showing that Mr. O'Brien's post-Class Period statements were not indicative of scienter because they were not of the required "I knew it all along" variety. Mot. 24.

### d) SOX Certifications and Mr. Hyzer's Departure Do Not Support a Strong Inference of Scienter.

Plaintiffs invoke the routine SOX certifications signed by the CEO and CFO, Opp. 31, yet the Ninth Circuit has squarely held that such boilerplate allegations "add nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1004. Plaintiffs also argue that Mr. Hyzer's resignation is "suspicious" because it coincided with the announcement of the $33 million charge, Opp. 31, but the Ninth Circuit requires more than temporal proximity—plaintiffs must "differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002. Plaintiffs allege no facts suggesting that Mr. Hyzer's departure was the result of wrongdoing, or that it was otherwise unusual in the context of typical corporate personnel transitions. *See Sterling*, 963 F. Supp. 2d at 1138.

### e) Defendants' Stock Sales Do Not Support a Strong Inference of Scienter

Plaintiffs argue that the "the sheer amount and percentage" of Defendants' stock sales supports a strong inference of scienter. Opp. 24-25. Wrong. Ninth Circuit precedent is clear that what matters is whether the sales were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Metzler*, 540 F.3d at 1067. Plaintiffs do not allege that the challenged sales were out of line with any prior trading patterns. It does not matter that, as Plaintiffs argue, ZoomInfo became a public company a few months before the Class Period. Opp. 28 n.12. "Even if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused." *Zucco*, 552 F.3d at 1005.

Plaintiffs attempt to make up for this shortcoming by arguing that Defendants' sales were "suspiciously timed" to follow alleged misstatements or periods of alleged stock price inflation. Opp. 26-27. But Plaintiffs' version of "suspicious timing" simply involves taking routine trading, spaced throughout the nearly four-year Class Period, and speculating that those routine sales are tied to the alleged misstatements made throughout the Class Period. Absent from the Complaint, however, are

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

any *facts* showing that the timing of any specific sale was coordinated with any particular alleged misstatement. That showing would be difficult to make, given that the vast majority of sales were executed pursuant to nondiscretionary 10b5-1 trading plans. Mot. 25-26. Plaintiffs counter that certain 10b5-1 plans were "amended" within the Class Period, yet they offer no facts showing that any amendment coincided with receipt of adverse information, or how the plans were manipulated to take advantage of inside information. As the Ninth Circuit has explained, when no temporal link between any alleged misstatement and specific stock sales is pled and the class period is long (like it is here), it "becomes difficult to see how particular stock sales would strengthen allegations that particular statements were uttered with [scienter] at the times they were made." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002). The failure to plead any such link here "operates to the detriment of [] Plaintiffs, because it is [their] burden under the PSLRA to provide a clear context from which [the Court] can find a strong inference of fraud." *Id.*

### B.      Plaintiffs Do Not State A Scheme Liability Claim

Plaintiffs' "scheme" claim under Rules 10b-5(a) and (c) just repackages the same misrepresentation theories advanced under Rule 10b-5(b) and thus fails for the same reasons. *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 902 (N.D. Cal. 2022). Plaintiffs articulate no basis on which the Complaint could be found to state a freestanding scheme claim without *also* stating a misrepresentation claim. Plaintiffs' cited authority, *SEC v. Richman*, 2021 WL 5113168 (N.D. Cal. Nov. 3, 2021), is not to the contrary: there, the court found that plaintiff adequately pled its 10b-5(b) misstatement claim. *Id.* at \*8.

### C.      Plaintiffs Do Not State A Control Person Claim.

Plaintiffs' Section 20(a) claims should be dismissed given Plaintiffs' failure to state a predicate Section 10(b) claim. *Zucco*, 552 F.3d at 990.

### III.      CONCLUSION

For these reasons, Defendants' Motion to Dismiss should be granted.

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC                    - 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300

Dated: August 25, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: *s/ James N. Kramer*

James N. Kramer (*Pro Hac Vice*)
jkramer@orrick.com
Alexander K. Talarides (*Pro Hac Vice*)
atalarides@orrick.com
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  +1 415-773-5700
Facsimile:  +1 415-773-5957

-    and    -

Paul F. Rugani (WSBA No. 38664)
prugani@orrick.com
401 Union Street, Suite 3300
Seattle, WA  98101
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

*Attorneys for Defendants ZoomInfo Technologies Inc., Henry Schuck, Cameron Hyzer, Joseph Christopher Hays, and DO Holdings (WA), LLC*

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC

- 13 -

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this memorandum contains 4,910 words, in accordance with the parties' stipulation as approved by the Court on May 16, 2025 (ECF 83).


Dated: August 25, 2025              ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   *s/ James N. Kramer*
      James N. Kramer (*Pro Hac Vice*)

REPLY ISO MOTION TO DISMISS CAC
CASE NO. 3:24-CV-05739-TMC                - 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA  98101
+1 206-839-4300