THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES INC., HENRY SCHUCK, CAMERON HYZER, JOSEPH CHRISTOPHER HAYS, TA ASSOCIATES MANAGEMENT, L.P., THE CARLYLE GROUP, INC., and DO HOLDINGS (WA), LLC,<br><br>Defendants. | No. 3:24-cv-05739-TMC<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS CORRECTED AMENDED COMPLAINT BY TA ASSOCIATES MANAGEMENT, L.P. AND THE CARLYLE GROUP, INC.**<br><br>**NOTE ON MOTION CALENDAR:** AUGUST 25, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – i
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.     THE AC DOES NOT PLEAD A CLAIM FOR FALSE AND MISLEADING STATEMENTS UNDER SECTION 10(b) AND RULE 10b-5(b) (COUNT I). ......................................................................................... 2

     a.     *Janus* Mandates Dismissal Because The AC Does Not Allege TA Associates Or Carlyle Made Any Of The Statements. ............................ 2

     b.     The AC Does Not Allege The Required Strong Inference That TA Associates Or Carlyle Acted With Scienter. ................................................. 4

II.     THE AC DOES NOT PLEAD SCHEME LIABILITY UNDER SECTION 10(b) AND RULE 10b-5(a) AND (c) (COUNT II). ................................................ 8

III.     THE AC DOES NOT PLEAD "CONTROL-PERSON" LIABILITY UNDER SECTION 20(a) (COUNT III). ................................................................... 9

CONCLUSION ......................................................................................................................... 11

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – ii
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*,
2012 WL 1983341 (C.D. Cal. May 31, 2012) ............................................................8

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ..........................................................10

*In re AnaptysBio, Inc. Sec. Litig.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ............................................................7

*Bao v. SolarCity Corp.*,
2015 WL 1906105 (N.D. Cal. Apr. 27, 2015) ...........................................................11

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) .......................................................................6

*Callan v. Motricity Inc.*,
2013 WL 195194 (W.D. Wash. Jan. 17, 2013) ...........................................................7

*Cesario v. Biocept, Inc.*,
2025 WL 525120 (S.D. Cal. Feb. 18, 2025) ...............................................................3

*Ferreira v. Funko Inc.*,
2021 WL 880400 (N.D. Cal. Feb. 25, 2021) ..............................................................7

*Fouad v. Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ................................................10, 11

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ...........................................................................9

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) .........................................................................10

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................6, 9

*Hefler v. Wells Fargo & Co.*,
2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) .............................................................3

*In re Impinj, Inc. Sec. Litig.*,
414 F. Supp. 3d 1327 (W.D. Wash. 2019) ..................................................................3

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014) ..........................................................................6

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022) ..................................................................10

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – iii
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

*Janus Cap. Grp., Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011)................................................................................................ *passim*

*Lipton v. Pathogenesis Corp.,*
    284 F.3d 1027 (9th Cir. 2002) ..........................................................................................6

*McCoy v. McCormick & Co.,*
    2025 WL 1918546 (E.D. Cal. July 11, 2025) .................................................................10

*McKenna v. Smart Techs. Inc.,*
    2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012)...................................................................10

*Microsoft Corp. v. Hon Hai Precision Indus. Co.,*
    2020 WL 836712 (N.D. Cal. Feb. 20, 2020) ..................................................................10

*Middlesex Ret. Sys. v. Quest Software Inc.,*
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................................................5

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.,*
    320 F.3d 920 (9th Cir. 2003) .......................................................................................5, 10

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
    380 F.3d 1226 (9th Cir. 2004) ..........................................................................................5

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC,*
    2016 WL 6782768 (C.D. Cal. Aug. 9, 2016)....................................................................3

*In re OmniVision Technologies, Inc. Sec. Litig.,*
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) ............................................................................7

*In re Questcor Sec. Litig.,*
    2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)......................................................................6

*Reckstin Fam. Tr. v. C3.ai, Inc.,*
    718 F. Supp. 3d 949 (N.D. Cal. 2024) ..............................................................................7

*In re Rocket Fuel, Inc. Sec. Litig.,*
    2015 WL 9311921 (N.D. Cal. Dec. 23, 2015)...................................................................4

*Simpson v. AOL Time Warner Inc.,*
    452 F.3d 1040 (9th Cir. 2006) ..........................................................................................9

*United Ass'n Nat'l Pension Fund v. Carvana Co.,*
    759 F. Supp. 3d 926 (D. Ariz. 2024) ................................................................................4

*In re Vantive Corp. Sec. Litig.,*
    283 F.3d 1079 (9th Cir. 2002) ..........................................................................................5

*Welgus v. TriNet Grp., Inc.,*
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017)............................................................2, 9, 11

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – iv
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

*In re Worlds of Wonder Sec. Litig.*,
721 F. Supp. 1140 (N.D. Cal. 1989) ...................................................................................10

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2022 WL 13800633 (C.D. Cal. Oct. 20, 2022).......................................................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...............................................................................................7

**Statutes**

Securities Exchange Act of 1934 Section 10(b) ................................................................ *passim*

Securities Exchange Act of 1934 Section 20(a) ............................................................1, 2, 4, 9

**Other Authorities**

17 C.F.R. § 240.10b-5.......................................................................................................... *passim*

Fed. R. Civ. P. 9(b) ..........................................................................................................8

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – v
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

**PRELIMINARY STATEMENT**

The AC does not allege that TA Associates or Carlyle made any of the allegedly false and misleading statements; it does not allege they had access to information concerning the truth or falsity of those statements; it does not allege they took any steps in furtherance of a scheme to defraud investors; and it does not allege they were involved in the day-to-day affairs of ZoomInfo or actually controlled the Company or any other Defendants.[1] So, left with nothing else, the Opposition tries to forge claims against TA Associates and Carlyle from one thing: their "astronomical" stock sales. Yet there is nothing remotely remarkable—much less fraudulent— about the fact that private equity investors like TA Associates and Carlyle gradually sold down their stake in ZoomInfo over the course of more than three-and-a-half years following the Company's IPO and in line with their business models. If that were the case, then virtually any private investor that exited its position following an IPO could be named as a defendant in a subsequent securities action. That is not the law. Plaintiffs cannot substitute the size or amount of TA Associates' and Carlyle's stock sales for the well-pleaded allegations required to state a sustainable claim under Sections 10(b) and 20(a). And their claims should be dismissed.

*First*, the Opposition cannot save Plaintiffs' misstatement claim under Section 10(b) and Rule 10b-5(b) (Count I). *See* Mot. § 1. The Supreme Court has made clear that only the "maker" of alleged misstatements can be liable for them—and the Opposition concedes that the AC does not allege that TA Associates or Carlyle made any of the challenged statements. It also fails to point to any factual allegations to support the legal conclusion that they had "ultimate authority" over any statements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). From there, the Opposition concedes that the AC does not allege that either TA Associates or Carlyle knew, or had reason to know, that any of the challenged statements were false when made *by others*. Rather, the Opposition doubles down on the incorrect argument that the Court can

[1] Capitalized terms have the same meanings as in the opening brief (ECF 87, the "Motion" or "Mot."), except the Corrected Amended Complaint (ECF 81) is referred to as the "AC." Plaintiffs' opposition (ECF 96) is referred to as the "Opposition" or "Opp."

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 1
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

infer scienter based solely on the amount of proceeds from TA Associates' and Carlyle's stock sales during the Class Period, even though such an inference is foreclosed by binding Ninth Circuit precedent. *See* Mot. at 9.

**Second,** the Opposition fails to rescue Plaintiffs' unfounded scheme-liability claims under Section 10(b) and Rule 10b-5(a) and (c) (Count II). *See id.* § 2. Under applicable law, Plaintiffs cannot resurrect a failed misstatement claim by re-labeling it as a "scheme," which is the shopworn word game that Plaintiffs are attempting. *See id.* at 11-13 (collecting cases dismissing duplicative scheme-liability claims). Here the strategy is transparent because the Opposition does not point to *any* factual allegations that TA Associates or Carlyle otherwise participated in a "scheme" to mislead investors. Again, the mere fact that TA Associates and Carlyle sold stock during the Class Period—and honestly disclosed it—is not fraud.

**Third,** the Opposition spotlights the frailty of the control-person claim under Section 20(a) (Count III). *See id.* § 3. The Opposition's vague assertions that TA Associates and Carlyle somehow controlled ZoomInfo, and/or exerted "significant influence" over its business, is a far cry from pleading "specific facts . . . demonstrat[ing] [their] involvement in the day-to-day affairs of the company," as is necessary to plead control-person liability, even under Rule 8's more lenient pleading standard. *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *12 (N.D. Cal. Jan. 17, 2017).[2]

## ARGUMENT

### I. THE AC DOES NOT PLEAD A CLAIM FOR FALSE AND MISLEADING STATEMENTS UNDER SECTION 10(b) AND RULE 10b-5(b) (COUNT I).

#### a. *Janus* Mandates Dismissal Because The AC Does Not Allege TA Associates Or Carlyle Made Any Of The Statements.

The Opposition does not identify any statements that were made by TA Associates or Carlyle because such statements do not exist. *See* Mot. at 6. The Opposition resorts to arguing that TA Associates and Carlyle had "ultimate authority" over the statements made by other Defendants

---

[2] TA Associates and Carlyle also incorporate by reference and join, as applicable, the additional arguments for dismissal set forth in the contemporaneously filed reply brief of ZoomInfo Technologies Inc., Henry Schuck, Cameron Hyzer, Joseph Christopher Hays, and DO Holdings (WA), LLC.

based on the generalized conclusions that TA Associates and Carlyle "were aware of and/or had access to [] information" (AC ¶ 154); "were able to and did control the content of ZoomInfo's SEC filings, press releases, and other public statements" (*id.* ¶ 466); "would have been provided with copies of the statements made in the SEC filings" (*id.*); and "would have had the ability to prevent [the statements'] issuance or cause them to be corrected" (*id.*). Opp. at 10-11. Such conclusory allegations do not satisfy Plaintiffs' burden to "plead specific facts to show [TA Associates' and Carlyle's] ultimate authority over each of the alleged misstatements." *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018). There is not a single ***allegation of fact*** in the AC that TA Associates or Carlyle saw, reviewed, approved, or even provided input on the "content and whether and how to communicate" any of the challenged statements. *Janus*, 564 U.S. at 142; *see also Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *10 (C.D. Cal. Aug. 9, 2016) ("generalized, conclusory allegations are insufficient to show that [private equity investor] controlled the statements or omissions").[3] Moreover, the Opposition does not point to any case where a stockholder such as TA Associates or Carlyle was found to have "ultimate authority." Rather, the Opposition relies exclusively on cases where corporate officers— *i.e.*, those insiders who are responsible for operating and speaking for the business—were found to be the makers of the challenged statements based on their positions and alleged responsibility for the statements. *See Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *11 (C.D. Cal. Oct. 20, 2022) (co-CEOs of SPAC, founder and chief product officer of target company, and CFO of target company were makers of statement in de-SPAC transaction press release) (cited in Opp. at 11); *In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *10 (N.D. Cal. Dec. 23,

---

[3] The Opposition struggles—and fails—to distinguish the cases cited in the Motion. *See* Opp. at 10-11 n.11. In *In re Impinj, Inc., Securities Litigation*, the court dismissed claims against a defendant where, just as here, plaintiffs failed to "allege ***non-conclusory facts*** giving rise to a plausible inference that [he] . . . possessed the ultimate authority over the content and dissemination of the [challenged] statements." 414 F. Supp. 3d 1327, 1336 (W.D. Wash. 2019) (emphasis added). And the Opposition misrepresents the court in *Cesario v. Biocept, Inc.*, which dismissed claims against company directors and certain third-parties where, just like here, plaintiffs failed to plead specific, non-conclusory facts that defendants had "ultimate authority" over the challenged statements. 2025 WL 525120, at *13-14 (S.D. Cal. Feb. 18, 2025).

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 3
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

2015) (CEO, President, and CFO were makers of statements on company's website) (cited in Opp. 10).

The Opposition also argues that TA Associates and Carlyle can be held liable as primary violators under Section 10(b) and Rule 10b-5(b) because they qualify as secondary "control person" defendants under Section 20(a). *See* Opp. at 10. This argument fails as a matter of law: whether the AC states a claim for primary liability against TA Associates and Carlyle for "making" false statements is a fundamentally different question from whether they can be held secondarily liable for the alleged false statements of the other Defendants. The two claims have different elements and are subject to different pleading standards. That is, even if the AC did adequately allege control-person liability (it does not, *see infra* Section III), it does not follow that TA Associates and Carlyle are makers of the allegedly false and misleading statements. *See, e.g.*, *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 951 (D. Ariz. 2024) (founder and controlling shareholder was a "control person" but not a "maker" of any challenged statement where it failed to allege "a material misstatement or omission by [him]" or even "a duty to correct an alleged omission or misrepresentation"); *see also Janus*, 564 U.S. at 146 (rejecting "theory of liability" with respect to Section 10(b) and Rule 10b-5(b) that was "similar to—but broader in application than" liability under Section 20(a)). Because the AC falls far short of the high bar for pleading primary liability under *Janus* against either TA Associates or Carlyle, the Opposition's argument that the Court should sustain the Section 10(b) and Rule 10b-5(b) claim based on the ***inapplicable*** Section 20(a) standard is unsupported by law.

### b. The AC Does Not Allege The Required Strong Inference That TA Associates Or Carlyle Acted With Scienter.

The AC does not contain a single non-conclusory allegation concerning TA Associates' or Carlyle's knowledge that could support an inference of scienter: there are no allegations based on internal documents or confidential sources, nor are there any other individualized allegations (as

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 4
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

opposed to impermissible group pleading) that bear on their state of mind. *See* Mot. at 7-8.[4] The Opposition concedes as much. *See* Opp. at 5-10. That is why the Opposition argues scienter solely on the basis of the allegedly outsized stock sales by TA Associates and Carlyle. *Id.* These *ipso facto* conclusions based on stock sales alone are insufficient to establish scienter as a matter of law. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (finding scienter on other grounds, but "suspicious" stock sales "standing alone [were] insufficient to establish scienter") (cited in Opp. at 6). The AC also fails to allege that any of the stock sales were unusual or suspicious.

*First*, the Opposition asserts that "the sheer number of shares that the Sponsor Defendants sold, and proceeds of those sales, are suspicious." Opp. at 6. Yet this is contrary to myriad Ninth Circuit caselaw. *See* Mot. at 9 (collecting cases). The Opposition does not cite ***any*** cases finding that the aggregate proceeds from stock sales standing on its own is sufficient and instead relies exclusively on cases that involved additional allegations not present here. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1228-29, 1231-34 (9th Cir. 2004) ($900 million in stock sales where (i) it was the first time defendant had sold stock in five years, and (ii) sales were made only a month before the corrective disclosure were "suspicious" and, ***together with*** defendant's admissions of first-hand knowledge and detailed allegations of accounting fraud, gave rise to inference of scienter); *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 939-44 (9th Cir. 2003) (acknowledging that "large numbers [and percentages] do not necessarily create a strong inference of fraud" and finding scienter based on additional allegations, including timing of sales and alleged prior trading history as well as particularized allegations concerning defendants' knowledge). Further, any inference of scienter based on the size of stock sales is undermined by the length of the Class Period. *See* Mot. at 9

---

[4] The AC does not even identify anyone at TA Associates or Carlyle who could have possessed scienter, which alone requires dismissal because "collective scienter" is wholly inapplicable here. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014).

(collecting cases).[5] The Opposition tries to minimize this factor by pointing to *In re Questcor Securities Litigation*, 2013 WL 5486762, at *15 (C.D. Cal. Oct. 1, 2013). Opp. at 7. But *Questcor* involved an 18-month long class period—*i.e.*, far shorter than Class Period here—and detailed allegations regarding the proportion of shares sold. 2013 WL 5486762, at *15. By contrast, there are ***zero*** allegations in the AC concerning the percentage of TA Associates' or Carlyle's holdings sold.

***Second***, the Opposition's hodgepodge of reasons why the timing of TA Associates' and Carlyle's stock sales appear "suspicious" are unpersuasive. Opp. at 7-8. That the sales were made "shortly after" certain challenged statements during the Class Period is neither surprising nor suspicious (*id.*): that is inevitably true because the AC challenged similar statements in every quarter throughout the Class Period (AC ¶¶ 235-355). *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) (sales not suspiciously timed where, as here, "Plaintiff simply [] alleged that every publicly-filed document . . . during the Class Period contain[ed] misstatements"). Moreover, there is nothing suspicious about the common practice of selling after earnings announcements. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (sales "following the public release of quarterly earnings and related financial disclosures" not suspicious); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118 (N.D. Cal. 2009) (similar).[6] Contrary to the Opposition (Opp. at 8), none of the sales were made when ZoomInfo stock was trading at or near its Class Period high of $77.35 per share in November 2021 (not that TA Associates or Carlyle would have any way of knowing what the Class Period high would be at the

---

[5] The Opposition attempts to distinguish just one of the cases cited in the Motion, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002), on the basis that the court there found that "plaintiffs' allegations did not support an inference of fraud throughout the class period" (Opp. at 7) but that is equally true here.

[6] *In re Intuitive Surgical Securities Litigation* also does not advance Plaintiffs' case: there, unlike here, plaintiffs "pled facts . . . show[ing] that Defendants knew that their statements regarding [] safety benefits were false or misleading when said" and "sold their shares at times after [they] learned of information that would adversely affect [the defendant company's] stock." 65 F. Supp. 3d 821, 839 (N.D. Cal. 2014).

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS BY TA ASSOCIATES AND CARLYLE – 6 (No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

time). *See* AC ¶ 176.[7] The December 4, 2020 stock sales were not suspicious because they took place immediately after the post-IPO "lock up" period ended. Opp. at 8; *see Callan v. Motricity Inc.*, 2013 WL 195194, at *24 (W.D. Wash. Jan. 17, 2013) (sales "not significant or unusual" where, as here, "vast majority of these sales took place . . . immediately after the 180-day post-offering lock-up period expired"). Nor was there anything suspicious about selling in the "non-dilutive" August 6 and 11, 2021 secondary offerings. (Opp. at 8-9). *See, e.g.*, *Ferreira v. Funko Inc.*, 2021 WL 880400, at *29 (N.D. Cal. Feb. 25, 2021) (secondary offering sales not suspicious). Last, that certain sales were made "without adopting a 10b5-1 plan" does not make those sales suspicious (Opp. at 9) because there is no requirement that a stockholder adopt such a plan, nor any legal authority that the failure to do so supports scienter (and the Opposition does not point to any). Merely because "sales are ***not suspicious*** [when a defendant] sold [] according to a pre-determined 10b-5 trading plan," does not render them suspicious when not under a plan. *In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413, at *9 (S.D. Cal. Sept. 20, 2021) (emphasis added).

   ***Third***, the Opposition admits that the AC does not include any allegations regarding TA Associates' or Carlyle's pre-Class Period trading history. *See* Opp. at 10 n.10. This pleading failure defeats any inference of scienter based on their stock sales. *See* Mot. at 10 (collecting cases). Moreover, it is no excuse that the Class Period began just a few months after ZoomInfo's IPO. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("Even if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history."); *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 986 (N.D. Cal. 2024) (similar).

---

   [7] AC ¶ 157 (December 2020 sales at "around $43 per share"); *id.* ¶ 166 (August 6 secondary offering priced at $54.75); *id.* ¶ 167 (August 11 secondary offering priced at $62). The Opposition cherry-picks language from *In re OmniVision Technologies, Inc. Securities Litigation*, but there the court found that trading allegations did not support an inference of scienter. 937 F. Supp. 2d 1090, 1112-13 (N.D. Cal. 2013).

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 7
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

## II.   THE AC DOES NOT PLEAD SCHEME LIABILITY UNDER SECTION 10(b) AND RULE 10b-5(a) AND (c) (COUNT II).

Far from saving Plaintiffs' scheme-liability claims under Section 10(b) and Rule 10b-5(a) and (c), the Opposition confirms that Plaintiffs' claims are little more than a re-packaging of their misstatement claims under Section 10(b) and Rule 10b-5(b). The Opposition states that "the nature of the scheme was to prop up ZoomInfo's stock price *through mispresenting the sustainability of the Company's growth and demand*." Opp. at 12 (emphasis added). Plaintiffs' scheme-liability claims thus fail for the same reasons: the AC does not allege that TA Associates or Carlyle made any of the challenged statements, nor does it contain allegations that give rise to a strong inference of scienter, including any allegations of a single specific fact suggesting TA Associates and Carlyle knew the statements were false when made. *See supra* § I; *see also* Mot. at 12 (collecting cases).

Even if the AC could be construed as asserting scheme-liability claims on a conduct-based theory, the result would be the same because there are no facts in the AC that they did anything. Who from TA Associates or Carlyle did what to mislead investors? With whom? The Opposition claims that TA Associates and Carlyle "employed artifices to artificially increase ZoomInfo's stock price." Opp. at 12 (citing AC ¶ 459). Yet the AC says nothing about how either firm supposedly employed such "artifices" and instead impermissibly lumps them together with the other Defendants. *See Cesario*, 2025 WL 525120, at \*21 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007))); *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at \*13 (C.D. Cal. May 31, 2012) (dismissing securities law claims against directors where "there are very few specifics directed at them" and plaintiffs "attempt[ed] to simply 'lump' [them] together with all of the other individual defendants").[8] The ***only conduct*** by either TA Associates

---

[8] *In re Galena Biopharma, Inc. Securities Litigation* held plaintiffs must plead the "roles of the defendants" in the scheme, and it sustained scheme-liability claims on the basis of detailed allegations

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 8
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

or Carlyle that is alleged in the AC is that they sold stock from pre-IPO investment in ZoomInfo, but there is nothing inherently deceptive about private equity firms selling stock in their post-IPO portfolio companies that creates scheme liability. *See* Mot. at 12-13. And there are no allegations concerning what role anyone from TA Associates or Carlyle played in the supposed "scheme" or that they engaged in any conduct that "had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*.

**III.    THE AC DOES NOT PLEAD "CONTROL-PERSON" LIABILITY UNDER SECTION 20(a) (COUNT III).**

Plaintiffs' control-person claims under Section 20(a) fail because the AC does not allege primary violations of Section 10(b) and Rule 10b-5 against any of the Defendants. *See* ZoomInfo Motion §§ III.A-C; *see also* Mot. §§ I-II; *supra* §§ I-II. The control-person claims against TA Associates and Carlyle also fail because the AC does not "allege specific facts concerning [their] responsibilities within the company that demonstrate [their] involvement in the day-to-day affairs of the company or specific control over the preparation and release of the allegedly false and misleading statements." *Welgus*, 2017 WL 167708, at *12. The AC alleges no such responsibilities or involvement by either stockholder. Mot. at 14-16.

As the Opposition concedes, the only ***factual*** allegation in the AC that Plaintiffs say is probative of "control" is that they together "held a significant percentage of the combined voting power immediately following ZoomInfo's secondary registered public offering held on August 9, 2021." Opp. at 13 (quoting AC ¶¶ 92-93).[9] This vague claim is not enough to plead control-person

___

regarding each defendant's conduct that was "separate from the alleged misrepresentations and omissions." 117 F. Supp. 3d 1145, 1193-95 (D. Or. 2015) (cited in Opp. at 12). The AC fails in both respects.

[9] The Opposition also points to the conclusory allegation that TA Associates and Carlyle "directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information about the Company, its business, operations, internal controls, growth, financial statements, and financial condition." Opp. at 13 (quoting AC ¶ 463). But this allegation too is insufficient to adequately plead control. *Welgus*, 2017 WL

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 9
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

liability against outside investors, such as TA Associates and Carlyle. Not only does the AC fail to specify how much "voting power" TA Associates and Carlyle held either individually or collectively (or whether it even amounted to majority voting power), but it also does not allege that TA Associates and Carlyle "acted together to [exercise] control" as is necessary to combine their voting power for the control analysis. *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at \*13 (W.D. Wash. Dec. 29, 2008); *see also In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1145, 1149 (N.D. Cal. 1989). The Opposition's cases involving control-person claims against third-party stockholders, meanwhile, spotlight the problem with *this* AC because those plaintiffs alleged specific control-related allegations that are conspicuously absent here. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund*, 320 F.3d at 925 (stockholders collectively controlled 57.3% of voting power and had power to elect majority of company's board and committees); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at \*37 (C.D. Cal. Aug. 8, 2013) (stockholder's board designees signed at-issue financial statements and company's founder and CEO expressly acknowledged stockholder was involved in "management decisions"); *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at \*19-20 (S.D.N.Y. Apr. 3, 2012) (co-founders of company collectively holding 70.5% voting power prior to IPO and that voted together to approve IPO were control persons for Section 15 claim).[10]

The Opposition cannot paper over the AC's deficiencies by relying on "control" allegations that do not exist in the AC. *See Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 WL 836712, at \*10 (N.D. Cal. Feb. 20, 2020) ("a party cannot amend the complaint through briefing").[11]

---

167708, at \*12; *see also Hansen Nat. Corp.*, 527 F. Supp. 2d at 1163 ("boilerplate allegation" insufficient to plead control-person claim).

[10] *Jaeger v. Zillow Group, Inc.*, 644 F. Supp. 3d 857 (W.D. Wash. 2022), is also inapposite. The *Jaeger* court held that the company's Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer (each of whom had made or signed certain of the allegedly false and misleading statements) were adequately alleged to be control persons. *Id.* at 875.

[11] Further, the "incorporation-by-reference" doctrine does not allow Plaintiffs to belatedly add new factual allegations to cure the AC's faults. *See McCoy v. McCormick & Co.*, 2025 WL 1918546, at \*5 (E.D. Cal. July 11, 2025).

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 10
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300

Specifically, the Opposition quotes from an unidentified ZoomInfo Form 10-K, which disclosed that as of an unspecified point in time TA Associates and Carlyle each had designated a member of the Company's board of directors and, consequently, would be able to exert "significant influence" over ZoomInfo's business and operations. *See* Opp. at 3 n.3, 13-14. Even if the Court were to err by relying on new facts from the Opposition, it still would not fix the problem. That TA Associates and Carlyle each designated a single member of the ZoomInfo board does not establish control as a matter of law. *See, e.g.*, *Fouad*, 2008 WL 5412397, at *13 (minority shareholders with power to appoint minority number of directors insufficient for control person liability); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) ("position as a minority shareholder . . . with an agent on the board does not establish control person liability"). And broad strokes about TA Associates' and Carlyle's ability to influence ZoomInfo are legally meaningless. *See Welgus*, 2017 WL 167708, at *12; *Bao v. SolarCity Corp.*, 2015 WL 1906105, at *5 (N.D. Cal. Apr. 27, 2015) (dismissing control-person claims where, as here, there were "neither factual allegations respecting [chairman of board's] power to exercise decision-making power, nor allegations of his involvement in the day-to-day operation").

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Motion, TA Associates and Carlyle respectfully request that the Court dismiss the claims against them with prejudice. *See* Mot. at 16.

DATED: August 25, 2025.

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By *s/ Paul F. Rugani*

Paul F. Rugani (WSBA No. 38664)
prugani@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: +1 206-839-4300
Facsimile: +1 206-839-4301

**GOODWIN PROCTER LLP**

Jonathan A. Shapiro (*pro hac vice*)
525 Market Street, 32nd Floor
San Francisco, California 94105
Tel.: (415) 733-6000
Fax: (415) 677-9041
JShapiro@goodwinlaw.com

Deborah S. Birnbach (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
DBirnbach@goodwinlaw.com

*Attorneys for Defendants TA Associates
Management, L.P. and The Carlyle
Group, Inc.*

*I certify that this memorandum contains 4,198 words, in
compliance with the Local Civil Rules.*

REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
BY TA ASSOCIATES AND CARLYLE – 12
(No. 3:24-cv-05739-TMC)

ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
+1 206-839-4300