The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE TEACHERS RETIREMENT SYSTEM OF OHIO et al., <br><br> Plaintiffs, <br><br> v. <br><br> ZOOMINFO TECHNOLOGIES INC. et al., <br><br> Defendants. | CASE NO. 3:24-cv-05739-TMC <br><br> **AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** <br><br> NOTED FOR: <br> December 15, 2025 |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 1
Case No. 3:24-CV-05739-TMC

responses should be reasonably targeted, clear, and as specific as possible.  This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case.  The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.    ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.    Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. To the extent such information is available and requested during the meet and confer process, the custodians shall be identified by name, title, connection to the instant litigation, and the type of information under the custodian's control.  In an effort to expedite the process and to facilitate good faith discussion, the producing party shall endeavor to exchange organizational charts to identify appropriate custodians, reporting lines and the structure of the organization during the relevant period.

2.    Non-custodial Data Sources.  A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI. The parties shall meet and confer regarding reasonable and proportionate discovery from these sources.

3.    Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 2
Case No. 3:24-CV-05739-TMC

4.    Inaccessible Data.  A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5.    Foreign data privacy laws.  Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, e.g., the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679.  The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C.    ESI Discovery Procedures**

1.    On-site inspection of electronic media.  Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    Search methodology. The parties shall timely confer in good faith regarding potential search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer-aided or technology-aided methodologies, before undertaking primary discovery efforts.

a.    In an effort to ensure accuracy of the search process, the producing party will identify search terms and provide a search term hit list or hit report after global de-duplication, including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families. The parties shall then meet and confer regarding the proposed search terms.

b.    If the producing party opts to use technology-assisted review ("TAR") for the purpose of culling documents for production, it shall notify the receiving party and meet and confer in good faith regarding the use of TAR for the purpose of culling documents for production. During the meet and confer, the Parties shall disclose:

- The types of documents/sources that will be subject to TAR application;

- Any pre-culling that was performed on the TAR document universe, including but not limited to the specific list of search terms used to create the TAR population;

- The specific tool to be used and quality control measures to be applied as part of the TAR workflow;

- The threshold determination of when to stop the TAR review of documents, including appropriate disclosure of recall and precision metrics;

- The process to be used for validation, including whether random samples from documents determined to be responsive and non-responsive by TAR will be reviewed, as well as any responsive, non-privileged hits from a narrow set of searches not to exceed more than 1,000 documents in total when families are included.

c.    Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                          PAGE - 4
Case No. 3:24-CV-05739-TMC

3.    Format.

a.    ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties.  Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

b.    Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c.    Each document image file shall be named with a unique number (Bates Number).  File names should not be more than twenty characters long or contain spaces.  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e.    The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

f.    The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file.  The Extracted Text shall be provided in searchable ASCII text

format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4.    De-duplication.    The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field as well as duplicate/other file path, if available, in the database load file.

5.    Email Threading & TAR.

a.    The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy.

b.    However, for communications that are entirely withheld for privilege, each individual email of a privileged thread shall be treated as a unique communication, and thus, logged as an individual entry on the privilege log.

c.    A party may elect to use TAR (including predictive coding) for culling and analyzing documents for responsiveness/production, provided the party has notified other parties in advance and complied with the provisions of Section C.2.b above.

6.    Metadata fields.  If available, all ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than email and e-documents that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties agree to meet and confer as to the appropriate metadata fields to be produced in

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 6
Case No. 3:24-CV-05739-TMC

the event that relevant metadata is missing or cannot be collected for technical reasons. The parties also agree that for text messages, Slack, and other forms of instant messaging/chats, the parties will unitize such chats into 24-hour segments and set up a mechanism whereby (to the extent reasonably feasible) responsive content referenced in a 24-hour segment that appears to be located in the immediately preceding segment will also be reviewed for responsiveness, whether or not the proceeding segment in question contains a search term hit.

7.    Hard-Copy Documents.  If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document.  Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI).  Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

8.    Attachments. The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any part that must be withheld or redacted on the basis of privilege.  If necessary, the parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments will be produced sequentially after the parent communication.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                      PAGE - 7
Case No. 3:24-CV-05739-TMC

9.      Hyperlinked Files.  The producing party shall promptly work to identify whether, and to what extent, their client utilized linked documents in the ordinary course of its business during the relevant period.  If such linking is determined to be a common occurrence, the parties shall meet and confer regarding the feasibility and burden associated with collecting and producing this data with linkage to the parent email.  The parties shall work in good faith to share information regarding the technical abilities and solutions of the systems involved.  However, if, without undue burden, documents cannot be extracted from links at the time of collection, the parties agree that document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a producing party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document containing the hyperlink.  If there are particular hyperlinks identified by the requesting party in produced documents, the requesting party may submit a list of hyperlinks to the producing party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link, and the producing party will engage in reasonable efforts to locate the hyperlinked document to the extent it exists as the same version when linked and either identify it by Bates number if already produced or provide any responsive, non-produced, and non-privileged documents.  The number of hyperlinks a requesting party may identify to a producing party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

9.      Structured Data.  To the extent a response to discovery requires production of electronic information stored in a database, the parties agree to meet and confer regarding methods of production.  The parties will consider whether all relevant information may be

provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**D.      Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.  With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.      The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

  a.      Deleted, slack, fragmented, or other data only accessible by forensics.

  b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

  c.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

  d.      Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

  e.      Back-up data that are duplicative of data that are more accessible elsewhere.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                   PAGE - 9
Case No. 3:24-CV-05739-TMC

f.    Server, system or network logs.

g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

h.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1.    A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created, as well as fields for the type of privilege asserted and a description sufficient for the purpose of evaluating the privilege claim asserted.    Privilege logs will be produced to all other parties no later than 30 days after delivering a production.    Therefore, substantially complete privilege logs shall be produced 30 days after the date of substantial completion.

2.    The parties shall identify the name(s) of any attorney(s) whose involvement with a logged document provides the asserted basis for the privilege or protection claimed.    This can be done either by including a column for "Attorney(s) Involved" or by putting attorney names in bold when they appear in the metadata and description of a logged document.

3.    Privilege logs shall be provided in searchable Microsoft Excel format.    To the extent a producing party provides multiple, or supplemental, privilege logs, each such log should

contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified.

4.      Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

5.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

6.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

7.      Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.  This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b) do not apply.  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

8.      The parties to the action shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                         PAGE - 11
Case No. 3:24-CV-05739-TMC

Stipulation or if compliance with such material aspect would be unreasonable, such party shall inform the receiving party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable. No party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with the other parties to the action in good faith at least once in writing and once via videoconference or phone and complied with all applicable local and other governing procedures for seeking relief.

The parties do not waive any objections as to the production, discoverability, admissibility, privilege, or confidentiality of hardcopy documents and ESI in this matter. Nothing in this Stipulation shall affect or undermine, in any way, a producing party's right to seek reimbursement for costs associated with collection, processing, review, and/or production of documents or ESI. As the Court has so-ordered this Stipulation shall not be construed to indicate that the Court has made any finding regarding whether there is any basis for shifting of costs.

DATED: December 15, 2025

**BYRNES KELLER CROMWELL LLP**

*/s/ Bradley S. Keller*
Bradley S. Keller, WSBA #10665
*/s/ Joshua B. Selig*
Joshua B. Selig, WSBA #39628
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Tel: (206) 622-2000
Fax: (206) 622-2522
bkeller@byrneskeller.com
jselig@byrneskeller.com

*Liaison Counsel for the Class*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
James T. Christie (*pro hac vice*)
Jacqueline R. Meyers (*pro hac vice*)
Kaicheng Yu (*pro hac vice*)
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
mrogers@labaton.com
jchristie@labaton.com
jmeyers@labaton.com
nyu@labaton.com

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Class*

**OFFICE OF THE ATTORNEY**
**GENERAL OF THE STATE OF OHIO**
Shawn Busken (*pro hac vice* forthcoming)
30 East Broad Street
Columbus, OH 43215
Tel: (800) 282-0515
Shawn.Busken@OhioAttorneyGeneral.gov

*Additional Counsel for Lead Plaintiffs*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Paul F. Rugani*
Paul F. Rugani (WSBA No. 38664)
prugani@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: +1 206-839-4300
Facsimile: +1 206-839-4301

James N. Kramer (*pro hac vice*)
Alexander K. Talarides (*pro hac vice*)
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-5700
Fax: (415) 773-5957

*Attorneys for Defendants ZoomInfo*
*Technologies, Inc., Henry Schuck, Cameron*
*Hyzer, and Joseph Christopher Hays*

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 13
Case No. 3:24-CV-05739-TMC

## ORDER

Based on the foregoing, IT IS SO ORDERED.


DATED: _____


_____
The Honorable Tiffany M. Cartwright
UNITED STATES DISTRICT JUDGE

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/ … /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the  usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                              PAGE - 15
Case No. 3:24-CV-05739-TMC

| Field Name | Example / Format | Description |
|---|---|---|
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item.  An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email  address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 16
Case No. 3:24-CV-05739-TMC

| Field Name | Example / Format | Description |
|---|---|---|
| **FULLTEXT** | D:\TEXT\ABC000 001.txt | The path to the full extracted text of the document.  There should be a folder on the  deliverable, containing a separate text file per document.  These text files should be  named with their corresponding Bates numbers.<br>NOTE: Emails should include header  information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file  does not extract any text, then OCR for the document should be provided. |

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                          PAGE - 17
Case No. 3:24-CV-05739-TMC